STATE ELECTION BOARD, Lake County Redistricting Commission, Appellants,

v.

Rudy BARTOLOMEI and Frank A. J. Stodola et al., Appellees.

No. 382S71.

Supreme Court of Indiana.

March 19, 1982.

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Indianapolis, for appellants.

Ellen S. Podgor, Crown Point, W. Henry Walker, East Chicago, for appellees.

PER CURIAM.

Plaintiffs-appellees commenced this action in the Lake Superior Court seeking declaratory and injunctive relief to prevent defendants-appellants from using redistricting plans drawn by the Lake County Redistricting Commission pursuant to Ind.Code § 36–2–2–4, and Ind.Code § 36–2–3–4. On change of venue the Newton Superior Court declared the sections of each statute relating to counties having more than two second-class cities unconstitutional as special laws, and granted plaintiffs' motion for preliminary injunction. This Court granted appellants'-defendants' emergency petition for a stay of the trial court's orders pending appeal and granted a motion for an expedited appeal.

The statutes provide:

Indiana Code § 36–2–2–4:

"(a) This subsection does not apply to a county having two or more second-class cities. The executive shall divide the county into three districts that:

(1) Are composed of contiguous territory; and

(2) Are reasonably compact. The executive may not divide precincts, and may divide townships only when a division is clearly necessary to accomplish redistricting under this section. If it is necessary to do so, the county auditor shall call a special meeting of the executive to establish or revise districts.

(b) This subsection applies to a county having more than two second-class cities. A county redistricting commission shall divide the county into three single-member districts that comply with subsection (d). The commission is composed of:

(1) The members of the state election board;

(2) Two members of the senate selected by the president pro tempore, one from each political party; and

(3) Two members of the house of representatives selected by the speaker, one from each political party.

The legislative members of the commission have no vote and may act only in an advisory capacity. A majority vote of the voting members is required for the commission to take action. The commission may meet as frequently as necessary to perform its duty under this subsection. Its members shall serve without additional compensation above that provided for them as members of the state election board, the senate, or the house of representatives.

(c) This subsection applies to a county having only two second-class cities. The executive shall divide the county into three single-member districts that comply with subsection (d).

(d) Single-member districts established under subsection (b) or (c) must:

(1) Be compact, subject only to natural boundary lines (such as railroads, major highways, rivers, creeks, parks, and major industrial complexes); and

(2) Contain, as nearly as is possible, equal population.

(e) A division under subsection (a), (b), or (c) shall be made in 1981 and every ten years after that, and may also be made in any other odd-numbered year."

Indiana Code § 36–2–3–4:

"(a) This subsection does not apply to a county having two or more second-class cities. The county executive shall, by ordinance, divide the county into four contiguous, single-member districts that comply with subsection (d). The executive may not divide precincts when redistricting under this section. If it is necessary to do so, the county auditor shall call a special meeting of the executive to establish or revise districts. One member of the fiscal body shall be elected by the voters of each of the four districts. Three at-large members of the fiscal body shall be elected by the voters of the whole county.

(b) This subsection applies to a county having more than two second-class cities. The county redistricting commission established under IC 36–2–2–4 shall divide

the county into seven single-member districts that comply with subsection (d). One member of the fiscal body shall be elected by the voters of each of these seven single-member districts.

(c) This subsection applies to a county having only two second-class cities. The fiscal body shall divide the county into nine single-member districts that comply with subsection (d). Three of these districts must be contained within each of the three districts established under IC 36–2–2–4(c). One member of the fiscal body shall be elected by the voters of each of these nine single-member districts.

(d) Single-member districts established under subsection (a), (b), or (c) must:

(1) Be compact, subject only to natural boundary lines (such as railroads, major highways, rivers, creeks, parks, and major industrial complexes);

(2) Contain, as nearly as possible equal population; and

(3) Include whole townships, except when a division is clearly necessary to accomplish redistricting under this section.

(e) A division under subsection (a), (b), or (c) shall be made in 1981 and every ten years after that, and may also be made in any other odd-numbered year."

Appellants urge that the trial court erred in determining that the specified sections of the statutes cannot pass constitutional muster because they are special laws prohibited by Ind.Const. Art. IV, §§ 22 and 23 which provide in pertinent part:

"§ 22. Local or special laws forbidden.—The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:

\* \* \* \* \* \*

■ Regulating county and township business;

■ Regulating the election of county and township officers and their compensation...."

§ 23. Privileges equal.—The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The trial court took judicial notice of the fact that Lake County is the only county in Indiana having more than two cities of the second class, and that of all counties not having a consolidated city, Lake County is the only county in which individuals who may not be residents of the county are involved with the process of redistricting the commissioner and county council election districts. The trial court held that the statutes were unconstitutional because "there is no rational basis for the distinct legislation for Lake County whereby the Indiana Election Board [members] are voting members and not the [county executive] as in all other counties in Indiana not having a consolidated city."

Appellants assert that the statutes and the specific sections in question are of uniform operation throughout the State in the same circumstances, and that the legislative classification based on the number of second-class cities bears a distinct and rational relationship to the subject matter of the legislation.

This legislation, like others, comes before the courts clothed with the presumption of validity. It is presumptively rational and constitutional. *Board of Commissions of Howard County v. Kokomo City Plan Commission* (1975) 263 Ind. 282, 330 N.E.2d 92. The burden is upon those who challenge its validity to make any constitutional defect clearly apparent.

The statutes at stake in this appeal, taken in conjunction with the Consolidated Cities and Counties Act, Ind.Code § 36–3–1–1 et seq., place Indiana counties in four categories, namely, counties in which there is a consolidated city-county government, counties in which there is no more than one second-class city, counties in which there are two second-class cities, and counties in which there are three or more second-class cities. In the first category, the duty to draw city-county legislative districts is as-

signed to the city-county council. In the second category which includes the vast majority of all Indiana counties, the duty to draw county commission election districts and county council election districts is given to the board of county commissioners [executive body]. In the third category which may at this time include only St. Joseph County, the duty to draw county commissioner election districts is given to the board of county commissioners, and the duty to draw county council election districts is given to the county council. In the fourth category, the duty to draw both county commissioner election district lines and county council election district lines is given to the State Election Board with the advice of four members of the state legislature, two from each political party.

■ At the outset, the mere facts that Lake County is the only county presently qualifying under the fourth category, and that the statutes were drafted apparently with only Lake County in mind do not render them unconstitutional since their terms do not prevent application of their provisions to any county that may eventually qualify. *Dortch v. Lugar* (1971) 255 Ind. 545, 266 N.E.2d 25; *Groves v. Board of Comm. of County of Lake* (1936) 209 Ind. 371, 199 N.E. 137; *State Election Board v. Behnke* (1974) 261 Ind. 540, 307 N.E.2d 56. Since they are general in form, the inquiry must turn to a traditional equal protection analysis, namely, "whether the legislative classification is based upon substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable." *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585, 597.

■ While the trial court is correct in its finding that only in the case of Lake County is the redistricting function removed from local officials, the entire picture is more complex than portrayed. Not only does that picture show that the locus of decision-making in this area is reposed in three different and discrete bodies, but it also shows that the make-up of the county councils varies from category of county to category of county, and that the criteria to be applied by the decision-maker vary from category of county to category of county. In the case of counties having no more than one second-class city, population is not a criterion in drawing county commissioner districts and the prohibition against dividing precincts and the preference against dividing townships are criteria. In the case of redistricting by the State Election Board, population is a criterion for this purpose, and there is no prohibition against dividing precincts and no preference against dividing townships. When the State Election Board draws councilmanic election districts it applies criteria which uniquely do not include any restriction upon dividing election precincts or any requirement that a specified number of councilmanic districts be included within the three commissioner districts. The councilmanic districts defined by the State Election Board are based purely upon population, compactness, and a preference for including whole townships. These distinctions in structure and criteria alert us to the fact that the statutes deal with a subject matter which is both multi-faceted and characterized by the juxtaposition of a variety of competing and arguable political views, warranting the court in granting the legislative judgment considerable deference. *Dortch v. Lugar, supra.*

The dominant characteristic of the classes is of course the presence of second-class cities, i.e., cities having a population of 35,000 to 249,999. Ind.Code § 36–4–1–1. The presence of such great cities within a county means that there are great governments there and citizens who identify strongly with those cities and who rely upon the services they supply. Whether or not a purpose of the statutes at stake, to establish single-member districts, comes to fruition, depends to a substantial degree upon the ability of the decision-maker to adhere to the criteria set forth in the statute and to ignore city entities and boundaries. The more cities there are in the county, the more difficult it would be to do this. A legislature intent upon establishing single-member districts for county governments

could conceivably regard the presence of three large cities within a county as defining that point at which a locally elected county redistricting body would suffer an impairment of its capacity to restrict its consideration to the statutory criteria. The removal of the redistricting function from the elected county executive to the elected state executive, the next highest executive authority in state government, would be one manner of avoiding this effect.

Undoubtedly the courts below were moved by the extreme measure employed in this statute. We are likewise moved. There is a wide departure here from a traditional norm. However, the Legislature, the elected representatives of the people, enjoys the discretion to take extreme measures so long as they do not transgress the commands of the Constitution. Under this new statutory scheme, the governor is the responsible party in the decision-making process. While he need not be a resident of Lake County, the people of Lake County participate in electing him. Under a single-member district plan, each voter in Lake County will participate in electing only one of three county commissioners and one of seven county council members. Viewed in this manner, the accountability of the governor to the individual resident of Lake County as compared to the accountability of an entire three member board of commissioners or a seven member county council to an individual resident of Lake County is not so much less as appears at first glance. In any event, a court does not sit in judgment upon the wisdom or underlying public policy of legislative enactments. Here the Legislature was within its authority to establish single-member districts within counties for the election of county commissioners and county council members, to classify counties for this purpose, and to take distinctive steps bearing a rational relationship to its goal. This it did. The statutes are not therefore violative of Art. 4, §§ 22 and 23. On like basis it is not violative of Art. 1, § 23.

The claim is also presented here, that the redistricting plan adopted by the State Election Board in September of 1981, in fulfillment of its duty under these statutes will if permitted to govern the forthcoming primary and general elections, render two intervenor-plaintiffs residing in Whiting, Indiana unable to vote for a commissioner in 1982 as scheduled under the previous plan, and delay their vote for a commissioner from their new district until 1984. The trial court in a single paragraph in its finding described this effect, but did not base his judgment thereon. To the extent this issue is present in the finding and briefs, we find that this impingement upon the right to vote is the natural and unavoidable consequence of redistricting and maintaining a system of staggered terms of office for members of the same governmental body and does not contravene the requirement of Art. 2, § 1 that "All elections shall be free and equal." Redistricting is the very technique by which the equality of the force of each vote is maintained as shifts in the population occur. The Indiana Constitution aims at maintaining this equal force. *Oviatt v. Behme*, (1958) 238 Ind. 69, 147 N.E.2d 897.

The judgment of the trial court is reversed and the cause remanded to the trial court with instructions to permit the 1981 plan of the redistricting commission to govern the forthcoming election.

PRENTICE, J., not participating.