STATE of Indiana and Indiana Department of Revenue, Appellants, (Defendants Below),

v.

Charles HOOVLER, Patricia Ann Palmer, Jeff Symmes, Linda L. Okos, Martin Okos, and Robert M. Stwalley, III, Individually and as Representatives for and on behalf of all other taxpayers similarly situated, Appellees, (Plaintiffs Below).

No. 79S00–9509–CV–1085.

Supreme Court of Indiana.

Aug. 7, 1996.

Pamela Carter, Attorney General of Indiana, Jon Laramore, Chief Counsel, Beth H. Henkel, Deputy Attorney General, Indianapolis, for Appellants.

Thomas J. Herr, Linda Nearing, Truitt & Herr, Lafayette, for Appellees.

Arthur P. Kalleres, Thomas K. Downs, Michael J. Lewinski, Ice, Miller, Donadio & Ryan, Indianapolis, for Amici Curiae, The City of Lafayette, The City of West Lafayette and Tippecanoe County.

Renee R. McDermott, Nashville, for Amici Curiae, The Indiana Manufacturers Assoc.

On Direct Appeal

DICKSON, Justice.

Public Law 44–1994 authorizes Indiana counties having a population of more than 129,000 but less than 130,600 to increase the county economic development income tax rate for certain purposes. According to the 1990 census, only one of Indiana's ninety-two counties falls within the statute's population parameters. The trial court found this enactment to be an unconstitutional local or special law in violation of sections 22 and 23 of Article IV of the Indiana Constitution. We reverse.[1]

The following findings by the trial court provide the pertinent facts of this case:

1. On March 2, 1994, the Indiana General Assembly enacted Public Law 44–1994 (HEA 1398), and on March 17, 1994, P.L. 44–1994 was signed into law by Governor Evan Bayh.

2. P.L. 44–1994 authorizes the county income tax council of a county "having a population of more than one hundred twenty-nine thousand (129,000) but less than one hundred thirty-thousand six hundred (130,600)" (P.L. 44–1994, Section 6(h)) to impose a county economic development income tax rate which, when added to the county option income tax rate for that county equals "up to one and twenty-five hundredths percent (1.25%)" (P.L. 44–1994, Sec. 6(h)(2)), if the county income tax money is needed in the county to fund substance removal or remedial action, including the repayment of bonds or other debt incurred for substance removal or remedial action, and the actions taken to fund substance removal and remedial action serve a public purpose by promoting public health, welfare, and safety. (P.L. 44–1994, Sec. 10(b)).

3. Based on the 1990 United States census, Tippecanoe County is presently the only county that comes within the population classification established by P.L. 44–1994, Section 6(h). Madison County, with an official population of 130,669 and Porter County, with an official population of 128,932, are presently excluded from the classification, as are all other counties in Indiana.

4. P.L. 44–1994 allows the county income tax council of a county that falls within the population classification of 129,000 to 130,600 to impose a higher rate of tax than that which counties outside the population classification may impose pursuant to Ind.Code § 6–3.5–7–5.

5. The Tippecanoe County Sanitary Landfill ("Landfill") is a privately owned landfill in Tippecanoe County, Indiana, and has been placed on the U.S. National Priorities List by the United States Environmental Protection Agency ("U.S.E.P.A."). Potentially Responsible Parties ("PRPs") may be required to pay the cost of the cleanup of the Landfill by the U.S. E.P.A. or may do the necessary cleanup at their expense. Tippecanoe County, the City of Lafayette, the City of West Lafayette, Purdue University, and a number of private businesses have been designated as PRPs by the U.S. E.P.A.

6. The Tippecanoe County Income Council has made a determination that economic development income tax money is needed in the county to fund substance removal and remedial action, including the repayment of bonds or other debt incurred for substance removal and remedial action pursuant to P.L. 44–1994, Sec. 10(b) and has adopted an ordinance increasing the Tippecanoe County economic income tax by 0.25%, pursuant to P.L. 44–1994, Sec. 6(h)(2).

7. The ordinance of the Tippecanoe County Income Council adopted by the Local Governments provides that

---

1. The Court acknowledges and appreciates the outstanding memorandum opinion of the trial court and the briefs and oral argument of counsel and amici curiae.

the economic income tax money collected pursuant to the rate increase is needed in Tippecanoe County "to fund substance removal and remedial action, including the repayment of bonds or other debt incurred for substance removal and remedial action."

8. Neither P.L. 44–1994 nor the ordinance of the Tippecanoe County Income Tax Council make reference to the Landfill or the purposes for which the funds generated by the tax rate will be expended.

9. The goal of P.L. 44–1994 is to provide a funding mechanism through a county economic development tax to pay for substance removal and remedial action.

10. The Indiana Department of State Revenue is the agency of state government designated to collect the county economic development income tax. It has no other role in the administration of the law.

11. Tippecanoe County is the only county in Indiana where the county and other local governments have been identified by the U.S. E.P.A. as operators of a "Superfund" site, the Landfill, and, therefore, are potentially responsible parties for the cleanup of the site.

12. The Landfill does not require removal of toxic industrial wastes but requires the completion of an impermeable cover and a leachate collection system. The problems of the Landfill are those of a typical sanitary landfill that has not been properly closed.

13. The situation regarding the cleanup of the Landfill is unique in that the PRPs are cooperating in the funding of the cleanup.

14. If the U.S. E.P.A. accepts the proposal of the PRPs, the cost of the cleanup may be minimized. If the proposal cannot go forward because the funding mechanism for the cleanup is not in place, the cost of the cleanup may increase.

15. Under the Superfund law, if the potentially responsible parties do not agree on a method for cleanup within 120 days following the issuance of the U.S. E.P.A.'s record of decision, the U.S. E.P.A. will undertake the cleanup and ultimately seek reimbursement for the cleanup from the PRPs.

Record at 751–54.

Based upon its findings of fact, conclusions of law, and explanatory memorandum, the trial court concluded that Public Law 44–1994 "is a local and special law providing for the assessment and collection of taxes for county purposes and therefore violates Article IV, Section 22," and further that the statute "is a special law violating Article IV, Section 23." Record at 760. Because this appeal involves a state statute that has been declared unconstitutional, jurisdiction rests with this Court.[2] Ind.Appellate Rule 4(A)(8).

The State contends that the statute is a valid and constitutional exercise of the legislative power to cure a unique local problem and does not fall into any category of prohibited special legislation or, in the alternative, that the statute is general, not special, legislation.

 In appellate review of claims tried by a court without a jury, the findings and judgment of the trial court shall not be set aside unless clearly erroneous. Ind.Trial Rule 52(A). However, the final determination of issues of law is a matter for this Court. See *Indiana Indus. v. Wedge Products*, 430 N.E.2d 419, 422 (Ind.Ct.App.1982). We will presume a statute to be constitutional, and a challenger, against whom all doubts are resolved, must overcome that presumption by clearly demonstrating the provision to be invalid. *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind.1992); *Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind.1984); *Johnson v. St. Vincent Hosp.*, 273 Ind. 374, 381, 404 N.E.2d 585, 591 (1980).

2. The plaintiffs assert lack of jurisdiction on grounds that the State failed to file its praecipe within thirty days after final judgment in a public lawsuit. The State responds that its praecipe was timely filed following the judgment as modified upon the plaintiffs' motion to correct errors. We reject the plaintiffs' claim of jurisdictional defect.

A local or special statute, as the words imply, is one that—unlike a statute of general applicability—applies not to the entire state but to a particular area, person, class of persons, or set of circumstances exclusively.[3] Because Public Law 44–1994 authorizes a special tax rate to be available to only one Indiana county, it is a local and special law. However, local or special laws are not ipso facto unconstitutional. While the drafters of Indiana's Constitution "expressed a preference for general laws, ... they also recognized that special laws were sometimes necessary." *Indiana Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 300 (Ind.1994). The issue before us is whether P.L. 44–1994 is a constitutionally permissible special law.

### Article IV, Section 22

Article IV, Section 22 prohibits local or special laws on subjects falling in any of sixteen categories. The State contends that the trial court erred in finding the statute to be a prohibited local and special law providing for the assessment and collection of taxes for county purposes.[4] Section 22 provides in pertinent part:

> The General Assembly shall not pass local or special laws ... [p]roviding for the assessment and collection of taxes for State, county, township, or road purposes....

Ind. Const. Art. IV, § 22. Resolution of this issue depends upon the meaning given to "assessment and collection."

In interpreting a particular provision of the Indiana Constitution, we seek "the common understanding of both those who framed it and those who ratified it." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 412 (Ind.1991),

*cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). Contemporaneous with the 1851 adoption of our constitution, the relevant definitions of the word "assessment" included: "[a] valuation of property or profits of business, for the purpose of taxation"; "a valuation made by authorized persons according to their discretions, as opposed to a sum certain or determined by law"; "a valuation of the property of those who are to pay the tax, for the purpose of fixing the proportion which each man shall pay; on which valuation the law imposes a specific sum upon a given amount"; "[a] tax or specific sum charged on persons or property"; and "[t]he act of assessing." Noah Webster, *An American Dictionary of the English Language* 77 (Chauncey A. Goodrich ed. 1856). The same dictionary defines "collection" as "the act of gathering or assembling." *Id.* at 224.

Public Law 44–1994 allows a limited increase in the rate of existing taxes but does not authorize any new property valuations or changes in the system of tax gathering. *See* Ind.Code §§ 6–3.5–7–1 to –22. In light of our duty to construe statutes to be constitutional if reasonably possible, we conclude that, as a matter of law, P.L. 44–1994 does not violate Article IV, Section 22, because it does not provide "for the assessment and collection of taxes."

### Article IV, Section 23

The State urges that the trial court erred in finding that P.L. 44–1994 violated Article IV, Section 23 of the Indiana Constitution, which states: "In all the cases enumerated in the preceding Section [Article IV, Section 22], and in all other cases where a general law can be made applicable, all laws

---

**3.** We acknowledge that some prior cases imply that a law selectively applicable to special locales or circumstances may be deemed to be general if it employs a population restriction to achieve its limited application. *See State Election Bd. v. Bartolomei*, 434 N.E.2d 74, 76–78 (Ind.1982). However, the mere presence of a population restriction does not convert an otherwise special law into a general and uniform law. *See North Township Advisory Bd. v. Mamala*, 490 N.E.2d 725, 726–27 (Ind.1986); *Heckler v. Conter*, 206 Ind. 376, 381, 187 N.E. 878, 879–80 (Ind.1933); *School City of Rushville v. Hayes*, 162 Ind. 193, 200–01, 70 N.E. 134, 137 (1904). When the legislature seeks to address a special or local

problem that cannot be resolved through the use of a general law, the General Assembly may enact a special law plainly designating its intended beneficiary and without employing the subterfuge of population limits, so long as it does not violate the strictures of Article IV, § 22. *See Moseley*, 643 N.E.2d at 298, 301.

**4.** The trial court's finding that the statute violated Article IV, Section 22 did not state that the statute violated that section's prohibition against local or special laws "[r]egulating county and township business," as alleged by the plaintiffs.

shall be general, and of uniform operation throughout the State." As discussed above, the challenged statute does not fall within any of the categories enumerated in Section 22. Therefore, the remaining issue is whether the subject of P.L. 44–1994 is amenable to a general law of uniform application throughout the state.

A succinct explanation of the trial court's conclusion that P.L. 44–1994 violates Section 23 is found in the following passages included in the written "Rationale of the Court," which accompanied the judgment:

> The goal or purpose of P.L. 44–1994 is to provide a funding mechanism through a county economic development income tax to pay for substance removal and remedial action. The Court does not find the classification in P.L. 44–1994, which excludes all counties having a population greater than 130,600 and less than 129,000, to be based upon substantial distinctions germane to the subject-matter and the object to be obtained.
>
> . . . . .
>
> ... The provisions of P.L. 44–19[9]4 will only apply to other counties similarly situated, now or in the future, if they, *purely by chance*, fall within the narrow population range. If the legislature intended to address the unique circumstances of Tippecanoe County, ... then a general law could have been enacted that provided a funding mechanism for substance removal and remedial action by counties having a landfill identified by the U.S. E.P.A. as a "superfund" site in which the county and cities of the county are PRPs. Then, the provisions would have been broad enough to apply to all counties under the same circumstances. It did not do so.

Record at 758–60.

The trial court's rationale is premised upon the idea that legislation authorizing the same optional tax rate modification would be a permissible general statute of uniform operation throughout the state, thus satisfying

Section 23, if it identified eligible counties not by population range but rather by designation as those having an E.P.A. Superfund landfill site for which local governments are Potentially Responsible Parties. We observe that such a statute would selectively apply to only one Indiana county. It would not, in fact, operate uniformly throughout the state. However, we would agree that such a statute would certainly comply with Section 23, not because it is general and uniform, but because it is a permissible special statute.

If we limit our consideration to the statute's population language, the trial court is correct in concluding that by using the population range method of identifying eligible counties, the statute has created a special legislative classification that fails to bear a rational relationship to the subject matter in question and the reason for which does not inhere in the statute. However, we find other circumstances surrounding Public Law 44–1994, including language in the Act itself, that—particularly under our deferential standard of review—clearly indicate that the legislature intended the statute to apply exclusively to Tippecanoe County.[5]

First, there is the narrow population range of 1600 persons (between 129,000 and 130,600) which applies only to Tippecanoe County. In the Rationale of the Court explaining its judgment, the trial court acknowledged that the population classification "serves no purpose other than to identify Tippecanoe County." Record at 760. The trial court further notes that Tippecanoe County is the only county in Indiana containing a "Superfund" site for which local governmental entities have been designated Potentially Responsible Parties by the E.P.A. Record at 754. Public Law 44–1994 applies when the county income tax council, by ordinance, determines:

> that economic development income tax money is needed in the county to fund substance removal and remedial action, including the repayment of bonds or other

---

5. We thus find it unnecessary to address the State's alternative argument that the population limits may be severed and stricken to avoid constitutional invalidity of the statute. *See* Ind.Code § 1–1–1–8. However, this question may arise in a future case if the population limits operate to exclude another county that would otherwise qualify because of EPA Superfund sites and governmental unit PRPs.

debt incurred for substance removal or remedial action, and the actions taken to fund substance removal and remedial action serve a public purpose by promoting public health, welfare, and safety. Ind.Code § 6–3.5–7–22(b). Public Law 44–1994 also authorizes any part of the resulting fund to be distributed to a political subdivision or entity formed by an interlocal cooperation agreement. Ind.Code §§ 6–3.5–7–22(e) to (f). The legislative intent of Public Law 44–1994 was to provide relief from potential Superfund liability. This purpose is demonstrated by the express incorporation into the Act of the definitions of "remedial action" and "removal" found in the Indiana Hazardous Substances Response Trust Fund Act, Ind.Code §§ 13–11–2–185, –187, and the definition of "hazardous substance" found both therein, Ind.Code § 13–11–2–98, and in the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601. *See* Ind.Code §§ 6–3.5–7–4.6 to 4.8.

The transactional costs and litigation expenses associated with determining the individual liability of Potentially Responsible Parties under the Comprehensive Environmental Response, Compensation, and Liability Act[6] can be staggering. *See* Sidney S. Liebesman, *Triggering an Obligation: Receipt of an EPA PRP Letter and an Insurer's Duty to Defend,* 5 Vill.Envtl.L.J. 479, 504 n. 165. *See generally* United States General Accounting Office, *Superfund—Legal Expenses for Cleanup–Related Activities of Major U.S. Corporations,* 1994 WL 792355 (Dec. 23, 1994) (hereinafter, *"GAO Report"*) (noting, inter alia, that in a survey of several hundred corporations, legal expenses comprised, on the average, one-third of total costs). These costs are in addition to the already burdensome costs of remediating Superfund sites. The record reveals that these costs will, in the present case, be born primarily by public entities, including Purdue University, the cities of Lafayette and West Lafayette, and Tippecanoe County. These transactional and litigation costs can be re-

duced substantially by entering into a consent decree, but the parties have only a limited time frame within which to enter into such a cost-reducing agreement. *See* Record at 1262–77, 1284–85. In response to these conditions, the legislature enacted Public Law 44–1994 to provide a funding mechanism for Tippecanoe County to deal with this unique problem. Without this revenue-generating system, there would be a lack of resources to enable entry into the consent decree, and the opportunity to reduce the costs associated with the landfill cleanup would be lost. This is a troubling national problem, *see generally* Charrise M. Fraccascia, *Taking Responsibility, Passing the Buck, and Cleaning Up the Mess: Making Municipal Liability Under CERCLA Work,* 44 Case W.Res.L.Rev. 1093 (1995), and no easy, all-encompassing solution exists.

We find that, in permitting Tippecanoe County to respond in a particular manner to the unique problems it faces under Superfund and related environmental legislation, the Indiana General Assembly enacted a special law authorizing Tippecanoe County to enact and administer a special tax rate increase not available to any other county. Mindful of the standard of review under which we uphold the constitutionality of statutes whenever reasonably possible, we conclude that permitting increased taxes due to Tippecanoe County's unique exposure to Superfund liability is not a matter necessarily subject to a general law uniformly applicable in all counties. We therefore conclude that P.L. 44–1994 does not, as a matter of law, violate Article IV, Section 23 of the Indiana Constitution.

Urging this Court to exercise strict review of the constitutionality of Public Law 44–1994, the plaintiffs also argue that because its population classification facially excludes other Indiana counties from eligibility, "it is very likely that most of the legislators who voted for it paid no attention to it," Brief of Appellees at 18, and that it "may be impossible to repeal ... because the constituents of the vast majority of the members of the legislature would be unaffected and their representatives would be disinterested." *Id.*

---

6. 42 U.S.C. §§ 9601–9675 (1994).

at 19. We decline this invitation to intervene in and adjust the legislative process, noting that the Indiana Constitution grants to each house of our General Assembly "all powers necessary for a branch of the legislative department of a free and independent State," Article IV, Section 16, and that it prohibits us from exercising any of the functions of the legislative department, Article III, Section 1.

The trial court judgment finding Public Law 44–1994 to be unconstitutional is reversed, and this cause is remanded for further proceedings consistent with this opinion.

SELBY, J., concurs.

SULLIVAN, J., concurs in result with separate opinion in which DeBRULER, J., joins.

SHEPARD, C.J., concurs and dissents with separate opinion.

SULLIVAN, Justice, concurring in result.

I concur in the result of Justice Dickson's opinion. However, I would hold that the population-based categories contained in the statute fulfill the requirements for a valid general law set by a long line of decisions by this court. *See, e.g., North Twp. Advisory Bd. v. Mamala,* 490 N.E.2d 725, 727 (Ind. 1986); *State Election Bd. v. Bartolomei,* 434 N.E.2d 74, 77 (Ind.1982); *Dortch v. Lugar,* 255 Ind. 545, 552–53, 266 N.E.2d 25, 31–32 (1971); *Graves v. City of Muncie,* 255 Ind. 360, 362, 264 N.E.2d 607, 609 (1970); *Bailey v. Evansville–Vanderburgh Airport Auth. Dist.,* 240 Ind. 401, 408–409, 166 N.E.2d 520, 523–24 (1960); *Bally v. Guilford Twp. Sch. Corp.,* 234 Ind. 273, 279–80, 126 N.E.2d 13, 16–17 (1955); *Groves v. Board of Comm'rs,* 209 Ind. 371, 375–76, 199 N.E. 137, 140 (1936) (citing additional cases). In *Dortch v. Lugar,* we upheld the constitutionality of a statute using population-based categories to create Unigov. What's good for Marion County ought be good for Tippecanoe County as well.

DeBRULER, J., joins.

SHEPARD, Chief Justice, concurring and dissenting.

I agree with Justice Dickson that the statute under challenge is adequately justified as a permissible special statute under Article I, Section 23.

On the other hand, I conclude that the Lafayette amendment to the general county economic development income tax is a "local or special law . . . . [p]roviding for the assessment and collection of taxes for State, county, township, or road purposes. . . ." Accordingly, I would hold it unconstitutional under Article I, Section 22.