CITY OF SOUTH BEND,
Appellant–Defendant,

v.

John KIMSEY and Denise Kimsey Bradley Hall and Carole Hall Terry Trethewey and Cheryl Trethewey Together with the Remaining Property Owners who are Signatories Hereto and who are Too Numerous to be Included in the Caption of this Remonstrance Complaint, Appellees–Plaintiffs.

No. 71A03–0101–CV–13.

Court of Appeals of Indiana.

July 17, 2001.

Aladean M. Derose, South Bend, Indiana, Attorney for Appellant.

Don G. Blackmond, Lynn M. Butcher, South Bend, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant City of South Bend, Indiana ("the City") appeals following an order denying annexation of land by the City in a remonstrance action commenced by St. Joseph County land owners, Appellees–Plaintiffs John Kimsey, et al. ("the Remonstrators"). We affirm.

### Issue

The City presents for review a single issue: whether Indiana Code section 36–4–3–13(g) [formerly 36–4–3–13(e) ] is special legislation prohibited by Article IV, sections 22 and 23 of the Indiana Constitution.

### Facts and Procedural History

On July 22, 1996, the Common Council of the City of South Bend, Indiana enacted Ordinance No. 8692–96 for the annexation of lands commonly known as the "Copperfield Annexation Area." On September 23, 1996, the Remonstrators filed a complaint in the St. Joseph Superior Court opposing the annexation. The City filed a Motion to Dismiss for Failure to State a Claim. Following a hearing held on December 4, 1996, the motion was denied. The City counterclaimed, seeking a declaratory judgment that Indiana Code section 36–4–3–13(e) was unconstitutional. On October 9, 1997, the City filed a Motion for Summary Judgment. (R. 76–77.) The Indiana Attorney General appeared, alleging the City's lack of standing to pursue the constitutional challenge. On April 30, 1999, the trial court entered an order concluding that the City had standing to raise the issue of the constitutionality of Indiana Code section 36–4–3–13. The Attorney General sought an interlocutory appeal. Following hearings held on July 21, 1999 and on August 11, 1999, the trial court denied the petition for certification for interlocutory appeal.

A summary judgment hearing was held on January 25, 2000. The City's motion for summary judgment was denied on March 6, 2000. The order provided in pertinent part:

The City claims subsection (e) is unconstitutional, specifically that it violates Article IV, Section 23:

In all cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State.

While counsel concede that the 200,-000 to 300,000 population category applied at the time of enactment, and still applies, to but one county—St. Joseph—there is nothing in the wording that would prevent other counties from ultimately being included depending upon future demographic changes. 'The mere fact that no other county presently qualifies does not render the Act unconstitutional.' *Dortch v. Lugar,* (1971) [255 Ind. 545], 266 N.E.2d 25, at page 31. (referring to the 1969 'Unigov' act).

Assuming the validity of the population based criterion, 'population must bear some rational relationship to the subject matter.' *North Tp. Advisory Bd. v. Mamala* (1986) 490 N.E.2d 725, at p. 727. Unfortunately, counsel stipulated that no legislative history exists concerning the 1993 amendment.

I.C. 36–4–3–13(a) through (d) recites the requirements the city must fulfill in order to annex. If it is able to do so 'the court *shall* order a proposed annexation to take place.' (emphasis added). Subsection (e), however, creates what might be characterized as an 'affirmative defense' available to the remonstrators in a 200,000 to 300,000 population county. If they can adduce convincing evidence showing the existence of (e)(2)(A),(B),

and (C) the court 'shall ... Order a proposed annexation *not* to take place.' (emphasis added). Subsection (e) has placed smaller counties (population of less than 200,000) and larger counties (population of more than 300,000) in the same legal category and given what might be called medium sized counties a special status the other two lack.

'An act of the legislature must be afforded a presumption of constitutionality. The challenger of the statute bears the burden to rebut that presumption and all reasonable doubts must be resolved in favor of the statute's constitutionality. *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673. When the challenge is to a statutory classification, the petitioner must demonstrate that the classification is arbitrary or capricious or does not bear a reasonable relationship to the legislative objective. *Board of Commissioners of the County of Allen v. Jones* (1983), Ind.App., 457 N.E.2d 580. *North Tp. Advisory Bd.*, at p. 726.'

The loss of rural land in this and other states has become a concern of which the court takes judicial notice. Arguably, subsection (e) reflects a political decision by the General Assembly that urbanization in this state should be restricted and that: (a) counties of more than 300,000 people have already lost their rural character and (b) that counties of less than 200,000 people are not at risk.

(R. 337–38.) On April 7, 2000, the City filed a Motion to Reconsider Order. On April 12, 2000, the trial court denied the Motion to Reconsider. On the day of trial, the City filed a stipulation of facts, conceding that the factual prerequisites of Indiana Code section 36–4–3–13(e) were established, such that the trial court could properly reach the Constitutional issue.

On November 27, 2000, the trial court entered the following order:

This cause having been set for trial on November 27, 2000, and the City of South Bend having submitted a Stipulation of Facts for Trial as to which the Remonstrators make no objection, the Court hereby adopts the City of South Bend's Stipulation of Facts for Trial and incorporates them as if fully recited herein. It is, therefore, ORDERED, that pursuant to IC 36–4–3–13(e), the City of South Bend's annexation within its corporate boundaries of the land identified in South Bend Ordinance # 8692 commonly known as the "Copperfield Annexation Area" shall not take place.

(R. 355.) From this order the City appeals.

### Discussion and Decision

#### I. Standard of Review

■ We will presume a statute to be constitutional, and a challenger, against whom all doubts are resolved, must overcome that presumption by clearly demonstrating the provision to be invalid. *State v. Hoovler,* 668 N.E.2d 1229, 1232 (Ind. 1996), *cert. denied,* 524 U.S. 905, 118 S.Ct. 2062, 141 L.Ed.2d 140 (1998). If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will uphold the statute because we will not attribute unconstitutional intention to the legislature if reasonably avoidable. *Price v. State,* 622 N.E.2d 954, 963 (Ind.1993). Unless the challenged statute is incapable of constitutional application, the court should limit itself to vindicating the rights of the party before it. *Id.* at 958.

#### II. Analysis

■ The City claims that Indiana Code section 36–4–3–13(g) [formerly 36–4–3–

13(e) ] is "special legislation" in derogation of Sections 22 and Section 23 of Article IV of the Indiana Constitution because it is legislation which applies solely to one county.

Article IV, Section 22 of the Indiana Constitution prohibits local or special laws on subjects falling in any of sixteen categories. Article IV, Section 23 provides: "In all the cases enumerated in the preceding Section [Article IV, Section 22], and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

■■■ A local or special statute, unlike a general statute, is one that applies not to the entire state but to a particular area, person, class of persons or set of circumstances exclusively. *Hoovler*, 668 N.E.2d at 1233. The drafters of Indiana's Constitution expressed a preference for general laws, but recognized that special laws are sometimes necessary. *Id.* Accordingly, a local or special law is not ipso facto unconstitutional. *Id.* If the subject matter of a law is entirely local, the subject is not amenable to a uniform law of general applicability, and thus, a law applicable to the local subject does not violate the Indiana Constitution. *In re Train Collision at Gary*, 654 N.E.2d 1137, 1141 (Ind.Ct.App. 1995), *trans. denied.*

At the outset, we observe that the challenged statute, which deals with annexation, does not fall within any of the categories enumerated in Section 22.[1] Accordingly, the dispositive inquiry is whether the challenged statute violates Section 23.[2]

---

1. Section 22 provides: The General Assembly shall not pass local or special laws:

 Providing for the punishment of crimes and misdemeanors;
 Regulating the practice in courts of justice;
 Providing for changing the venue in civil and criminal cases;
 Granting divorces;
 Changing the names of persons;
 Providing for laying out, opening, and working on, highways, and for the election or appointment of supervisors;
 Vacating roads, town plats, streets, alleys, and public squares;
 Summoning and empanelling grand and petit juries, and providing for their compensation;
 Regulating county and township business;
 Regulating the election of county and township officers and their compensation;
 Providing for the assessment and collection of taxes for State, county, township, or road purposes;
 Providing for the support of common schools, or the preservation of school funds;
 Relating to fees or salaries, except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required;
 Relating to interest on money;

 Providing for opening and conducting elections of State, county, or township officers, and designating the places of voting;
 Providing for the sale of real estate belonging to minors or other persons laboring under legal disabilities, by executors, administrators, guardians, or trustees.

2. In *Williams v. State,* 724 N.E.2d 1070, 1085 (Ind.2000), n. 15, *cert. denied,* —— U.S. ——, 121 S.Ct. 886, 148 L.Ed.2d 793 (2001), the Indiana Supreme Court discussed the impetus for the enactment of Sections 22 and 23 of the Indiana Constitution: "Under the Indiana Constitution of 1816, the legislature regularly passed special statutes on a variety of topics, leading to the adoption of Article 4, Sections 22 and 23 of the Indiana Constitution of 1850. *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 299 (Ind.1994). Perusal of some special laws and laws governing local practice suggests the nature of the problem that Sections 22 and 23 sought to address. *See, e.g.,* an Act authorizing the Hancock County Circuit Court to empanel a grand jury to hear charges against John Hays, ch. LXXXI, 1835 General and Local Laws of Ind. 174 (1834); an Act authorizing the sale of the real estate of the deceased Joseph Swank, ch. LXXXIV, 1835 General and Local Laws of Ind. (1834); and an Act authorizing Margaret Hurd to file a bill for a divorce in Martin County Circuit

■ At issue here is the validity of Indiana Code section 36–4–3–13(g) [formerly 36–4–3–13(e) ], which provides:

This subsection applies only to cities located in a county having a population of more than two hundred thousand (200,000) but less than three hundred thousand (300,000). However, this subsection does not apply if on April 1, 1993, the entire boundary of the territory that is proposed to be annexed was contiguous to territory that was within the boundaries of one (1) or more municipalities. At the hearing under section 12 of this chapter, the court shall do the following:

(1) consider evidence on the conditions listed in subdivision (2).

(2) Order a proposed annexation not to take place if the court finds that all of the following conditions exist in the territory proposed to be annexed:

(A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:

(i) Police and fire protection.

(ii) Street and road maintenance.

(B) The annexation will have a significant financial impact on the residents or owners of land.

(C) One (1) of the following opposes the annexation:

(i) A majority of the owners of land in the territory proposed to be annexed.

(ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.[3]

Court, and to regulate the proceedings thereon, ch. XC, 1849 Local Laws of Ind. 129 (1850)."

In analyzing a law under Section 23, we must first determine whether the law is general or special. *Williams,* 724 N.E.2d at 1085. If the law is general, we must then determine whether it is applied generally throughout the State. *Id.* If it is special, we must decide whether it is constitutionally permissible. *Id.*

■ Notwithstanding Section 23, the legislature may make classifications of subjects of legislation, provided the classification is reasonable and the statute operates equally on all within the class. *Railroad Commission of Indiana v. Grand Trunk Western R. Co.,* 179 Ind. 255, 100 N.E. 852 (1913). The statute is then considered to be general. *State Election Board v. Behnke,* 261 Ind. 540, 543, 307 N.E.2d 56, 58 (1974). Reviewing courts defer to the discretion of the legislature in establishing classifications:

It is, of course, competent for the legislature to classify objects of legislation. It has a large discretion in this regard, and if the classification is reasonable, not artificial or arbitrary, and rests upon some substantial difference of situation or circumstances indicating the necessity or propriety of legislation restricted to the class created, it will be upheld. It must have regard to the character of the legislation and the distinctions must bear a proper relation to the classification. However, if these fundamental requirements are present, it has been said that classification need not be scientific, consistent, logical or exact. It is not necessary that the reason for the classification should appear on the face of the legislation. In determining the propriety of the classification the court may

3. Pursuant to Indiana Code section 36–4–3–13(e)(2)(D)(1), in other population categories, a proposed annexation is defeated by the objection of 65%, rather than 50% of the resident property owners in the annexation area.

resort to facts that are within its judicial knowledge, contemporaneous conditions and situations of peoples, existing state policies, and matters of common knowledge.

*State v. Griffin*, 226 Ind. 279, 287, 79 N.E.2d 537, 541–42 (1948). When the challenge is to a statutory classification, the petitioner must demonstrate that the classification is arbitrary or capricious or does not bear a reasonable relationship to the legislative objective. *Board of Commissioners of the County of Allen v. Jones*, 457 N.E.2d 580, 587 (Ind.Ct.App.1983).

 The fact that one governmental unit presently qualifies under a particular statute and the statute was apparently drafted with that one unit in mind does not render the statute unconstitutional if the terms of the statute permit other units to eventually qualify. *In re Train Collision*, 654 N.E.2d at 1141. "If the act is broad enough to apply to all counties of the state under the same circumstances, it cannot be condemned." *Groves v. Board of Comms. of Lake County* (1936) 209 Ind. 371, 376, 199 N.E. 137, 140. *See also Bailey v. Evansville–Vanderburgh Airport Authority District*, 240 Ind. 401, 409, 166 N.E.2d 520, 524 (1960) (holding that the challenged act should not be regarded as local or special simply because at the time of its enactment it may have applied to but one city). However, the Indiana Supreme Court has found a statute constitutionally infirm where the population criteria was accompanied by an expiration date such that effectively no county but Lake could ever qualify under the provisions of the challenged statute. *Behnke*, 261 Ind. at 542, 307 N.E.2d at 58.

In *State Election Bd. v. Bartolomei*, 434 N.E.2d 74 (Ind.1982), the Indiana Supreme Court considered the constitutionality of a redistricting statute challenged as special legislation. The trial court took judicial notice of the fact that Lake County was the only county in Indiana falling within a particular classification, concluded that there existed no rational basis for distinguishing between Lake County and other counties, and declared the challenged statute unconstitutional because of the prohibitions of Sections 22 and 23 of Article IV of the Indiana Constitution. *Id.* at 76. The Indiana Supreme Court reversed the judgment of the trial court, stating in pertinent part:

> At the outset, the mere facts that Lake County is the only county presently qualifying under the fourth category, and that the statutes were drafted apparently with only Lake County in mind do not render them unconstitutional since their terms do not prevent application of their provisions to any county that may eventually qualify. *Dortch v. Lugar* (1971) 255 Ind. 545, 266 N.E.2d 25; *Groves v. Board of Comm[s]. Of County of Lake* (1936) 209 Ind. 371, 199 N.E. 137; *State Election Board v. Behnke* (1974) 261 Ind. 540, 307 N.E.2d 56. Since they are general in form, the inquiry must turn to a traditional equal protection analysis, namely, 'whether the legislative classification is based upon substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable.' *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 273 Ind. 374, 404 N.E.2d 585, 597.

*Id.* at 77. Here, as in *Bartolomei* and the decisions upon which *Bartolomei* rests, the challenged statute is applicable to any county that, because of increased or decreased population growth, will fall within the prescribed population limits. Moreover, the statute prescribes neither a restrictive population range nor mandatory cut-off time for qualification. Thus, it is not predestined to apply to only one county. It is susceptible of uniform application

to any county in the State meeting the population criteria. Accordingly, it is general rather than special legislation.

We must also determine whether the classification rests upon a rational basis. The trial court concluded that the legislature was concerned with the preservation of rural land in the face of aggressive urbanization and appropriately decided to treat counties of more than 300,000 as urban and counties of less than 200,000 as rural, with a particular remonstrance provision being made available to the mid-range population counties, those most likely targeted for urbanization. Any reasonable interpretation of a statute is sufficient if it evokes a finding of constitutionality. *Mahowald v. State*, 719 N.E.2d 421, 424 (Ind.Ct.App.1999).

To support its summary judgment motion, the City offered population growth statistics intended to show the remoteness of the prospect that a county other than St. Joseph County would fall within the 200,000 to 300,000 population classification in the near future. However, given the statute's presumption of constitutionality, we conclude that the City failed to negate "every conceivable basis which might have supported the classification." *American Legion Post # 113 v. State*, 656 N.E.2d 1190, 1192 (Ind.Ct.App.1995), *trans. denied.* Applying the required deferential standard of review, we hold that Indiana Code section 36–4–3–13(g) does not violate Art. IV, Section 23 of the Indiana Constitution.

Affirmed.

BAKER, J., and MATHIAS, J., concur.