ATTORNEYS FOR APPELLANTS
Steven K. Emery
Kevin A. Halloran
Bloomington, Indiana

ATTORNEYS FOR APPELLEES
David B. Shilling
William K. Steger
Bloomington, Indiana

# In the
# Indiana Supreme Court

No. 53S00-0508-CV-384

ALPHA PSI CHAPTER OF PI KAPPA PHI FRATERNITY, INC.,
LAMBDA CORPORATION, AND DELTA ALPHA OF ALPHA
TAU OMEGA, INC.,

*Appellants (Defendants below),*

v.

AUDITOR OF MONROE COUNTY AND COMMISSIONERS OF
MONROE COUNTY,

*Appellees (Plaintiffs below).*

Appeal from the Monroe Circuit Court, No. 53C04-0309-PL-1678
The Honorable Mary Ellen Diekhoff, Judge

**June 29, 2006**

**Shepard, Chief Justice.**

The Indiana Constitution prohibits special laws which grant privileges to a few people that are not available to others. The statutory amendment in this case exempted three taxpayers, after the fact, from tax deadlines applicable to everyone else. The trial court was right to uphold the Constitution.

1

**Facts and Procedural History**

The Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc., Lamdba Corporation, and Delta Alpha of Alpha Tau Omega, Inc. (hereinafter "taxpayers") each failed to file timely applications for property tax exemptions for their property in Monroe County.[1] Their failure to do so resulted in the assessment of property tax against their real estate in 2000 and 2001, with the tax due and payable in 2001 and 2002 respectively.

During its 2003 session, the Indiana General Assembly passed Public Law 256-2003.[2] 2003 Ind. Acts 2603. Section 44 of the act retroactively provided what amounted to a filing extension that permitted the taxpayers to apply for their 2000 and 2001 property tax exemptions in 2004 and required the county auditor to grant those exemptions. 2003 Ind. Acts 2653. In relevant part, Section 44 provides:

> (a) This SECTION applies to property that:
>   (1) is used for a fraternity for students attending Indiana University;
>   (2) is owned by a nonprofit corporation that was previously determined by the auditor of the county in which the property is located to be eligible to receive a property tax exemption . . .
>   (3) is not eligible for the property tax exemption . . . for property taxes due and payable in 2001 or 2002 because the nonprofit corporation failed to timely file an application . . . .
>
> (b) . . . [T]he auditor of the county in which the property described in subsection (a) is located shall:
>   (1) waive noncompliance with the timely filing requirement for the exemption application in question; and
>   (2) grant the appropriate exemption.
> (c) A property tax exemption granted under this SECTION applies to:
>   (1) property taxes first due and payable in 2001; and
>   (2) property taxes first due and payable in 2002.

Id.

---

[1] See IND. CODE ANN. § 6-1.1-10-16(a), (b) & § 6-1.1-10-24 (West 2006). These code sections provide for property tax exemptions on the real estate owned and used by various types of groups for specific purposes. In particular, the group that owns the property must use it for educational, literary, scientific, religious, or charitable purposes, or must be a fraternity or sorority connected to and supervised by an educational institution.
[2] The Public Law originated in the House as H.B. 1814.

In July 2003 one of the taxpayers, Pi Kappa Phi, requested that the Monroe County Auditor refund the taxes paid on its property pursuant to Section 44. Rather than issuing the refund, the Auditor filed for declaratory judgment in the Monroe Circuit Court, naming all three taxpayers and contending that Section 44 was unconstitutional as a special law.[3]

In December 2004, the Monroe Circuit Court granted the Auditor's request for a declaratory judgment, and held the relevant section of Public Law 256-2003 unconstitutional under Article IV, Section 22 and Article IV, Section 23 of the Indiana Constitution. The appeal of the order is directly here under Indiana Appellate Rule 4(A)(1)(b) (cases where a statute has been held unconstitutional). Concluding that the trial court was correct under Section 23, we need not analyze the Section 22 questions.

## Section 44 is "Special" Legislation

Section 22 of Article IV prohibits enactment of various local or special laws of particular kinds, like laws granting divorces. Section 23 establishes a requirement of general laws where such can be made.[4] This Court analyzes the meaning of constitutional provisions "by examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." Indiana Gaming Comm'n v. Moseley, 643 N.E.2d 296, 298 (Ind. 1994). We therefore turn to the historic background surrounding the drafting of these provisions to determine their significance.

---

[3] In February 2004 the taxpayers filed applications with the Monroe County Assessor seeking exemption from payment of the bills based on the 2000 and 2001 assessments. (Appellants' App. at 28.) After review of the applications, the Monroe County Property Tax Assessment Board of Appeals — the entity usually charged with approving or disapproving exemptions, IND. CODE ANN. § 6-1.1-11-7 (West 2006) — found that although the applications filed by the taxpayers complied with the other established procedural requirements, it could not order the Monroe County Auditor to refund the taxes because Section 44 assigns the power to determine if a group is eligible for the exemption to the Auditor and not the county PTABOA. (Appellants' App. at 28-29.)

At oral argument, we briefly questioned whether this Court could hear the case inasmuch as the taxpayers had not exhausted administrative remedies from the determination by the Monroe County PTABOA. We think Appellants' counsel was right to reply that other than filing their exemption application, there was little for the taxpayers to do once the Auditor filed the declaratory judgment action. Because the public law puts the authority to determine exempt status in the hands of the Auditor, it was up to the Auditor to refund the taxes, proceed to court, or wait to be sued. Given the way Section 44 is written, there were no administrative remedies to invoke.

[4] Article IV, Section 23 provides: "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

A. History of the Prohibitions.    Under the 1816 Constitution, the legislature involved itself deeply in local matters.  Scholars suggest that by the 1849 and 1850 legislative sessions, about 90% of all the laws passed were special in nature.  Frank E. Horack & Matthew E. Welsh, Special Legislation: Another Twilight Zone, 12 IND. L.J. 109, 115 (1936).  The record of the debates during the convention indicates that the delegates to the constitutional convention believed that from the admission to statehood to the end of the constitutional convention, more than "two-thirds of all the laws enacted in this State" were special or local in nature.[5]

The debates also illustrate the importance the delegates placed on saving for topics of wider importance the legislative time consumed in passing local legislation.  Delegate John Pettit spoke frequently on this matter.  In one such statement, he said:

> I hold, sir, that the laws should be general in every instance.  Sir, if this is not done, you are just leaving undone the very thing which, most of all others, we were sent here to do — to cut down this whole system of local legislation, so that a man, in stepping over the boundary line of one county into another county, might not be under the painful uncertainty as to whether he was living under the same system of laws.

2 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1765-66 (1850) (hereinafter Debates).  In another statement Pettit remarked that "almost the whole necessity of calling this Convention, was to do away with this local legislation. . . . All that is most necessary is to have uniformity in our laws."  Debates, at 1771.

Pettit was hardly alone.  In his closing remarks praising the work of the delegates, convention president George W. Carr declared that the new Constitution contained "an effectual remedy for that most injurious evil in our legislation for many years past, known as local and special enactments."  Debates, at 2077.

---

[5] 2 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 2043 (1850).  The pervasiveness of the practice had reached the point that in an address to the Indiana General Assembly, Governor James Whitcomb stated that "[i]f calling a convention to amend the constitution were productive of no other result than furnishing an effectual remedy for th[is] growing evil [of special and local legislation], it would be abundantly justified."  Indiana Gaming Comm'n v. Moseley, 643 N.E.2d 296, 299 (Ind. 1994) (alteration in original) (quoting House Journal 33d sess. 24 (1849)).

One analysis of the debates suggests that while there was a great deal of contention as to the best way to limit special legislation, the delegates were nevertheless united in their opposition to excessive special legislation. See Frank E. Horack & Matthew E. Welsh, Special Legislation: Another Twilight Zone, 12 IND. L.J. 183, 192-94 (1937). The Address to the Electors, prepared in committee to describe the provisions of the new Constitution to those who would vote on its ratification, singles out Sections 22 and 23 of Article IV as "[t]he most important restriction imposed on the legislative branch, . . . that which provides that, in a variety of enumerated cases . . . and in all other cases where a general law can be made applicable, no special law shall be passed." Debates, at 2043. The committee that authored the Address went on to note that through this provision "[m]ore than two-thirds of our legislation . . . and the most confusing and most mischievous portion of it-is cut off . . . ." Id. The Address received unanimous concurrence. Debates, at 2046; Journal of the Convention of the People of Indiana 972-73 (1936 reprint).

This Court has long recognized that while the purpose of Section 23 was "to prohibit the passage of any law applicable only to one or more counties . . . . It is clearly implied . . . and we know it to be true in fact, that in many cases local laws are necessary." Gentile v. State, 29 Ind. 409, 411-12 (1868) overruled by Heckler v. Conter, 206 Ind. 376, 187 N.E. 878 (1933) (holding that, contrary to earlier decisions, the judiciary does have power to review special legislation).

B. Section 44 is Special Legislation. The determination of whether a law is special or general is a threshold question in determining its constitutionality under both Article IV, Section 22 and Section 23. Municipal City of South Bend v. Kimsey, 781 N.E.2d 683 (Ind. 2003). The taxpayers do make one argument that it is general. They point out that Section 44 "is not restricted in is [sic] application to a specific locality or geographic area" because the law applies to "any property used for a fraternity for students attending Indiana University, [which has campuses] in eight counties throughout the state." (Appellants' Br. at 9.)

The mere possibility that a statute can apply outside of the area specified by its terms is not de facto evidence of its status as a "general" law. See, e.g., Kimsey, 781 N.E.2d at 691; State

5

v. Hoovler, 668 N.E.2d 1229, 1233 n.3 (Ind. 1996) (collecting cases). In <u>Kimsey</u>, we stated that a "statute is 'general' if it applies 'to all persons or places of a specified class throughout the state.'" 781 N.E.2d at 689 (quoting Black's Law Dictionary 890 (7th ed. 1999)).

Here we must make an important distinction. When <u>Kimsey</u> speaks of a "class" it does not mean a particular group defined in a particular statute, but rather the broader classification to which the particular group belongs. Were it otherwise, the General Assembly could grant privileges to any group, no matter how small and specialized, by simply drafting legislation that self-defined the "specified class." This would produce a situation no different than that prior to the enactment of the 1851 Constitution and render useless the provisions of Sections 22 and 23.

In this case, the "specified class" of which <u>Kimsey</u> talks includes at least all property-owning fraternities and sororities, because that is the smallest relevant class the legislature has defined by statute as eligible for a property tax exemption. <u>See</u> IND. CODE ANN. §§ 6-1.1-10-16, -24 (West 2006). Because Article X, Section 1 of the 1851 Constitution permits the General Assembly to create property tax exemptions for property "used for municipal, educational, literary, scientific, [and] religious or charitable purposes," it was proper for the legislature to define all fraternities and sororities as a "specified class," just as it was permissible for the General Assembly to choose to create a "specified class" when it authorized riverboat gambling in select counties in the statute challenged in <u>Indiana Gaming Comm'n v. Moseley</u>, 643 N.E.2d 296, 297-98, 300 (Ind. 1999). Still, when a later statute singles out a group smaller than the previously specified class to receive unique privileges, the law necessarily becomes special.

This is precisely what happened here. Not only does Section 44 exclude all other groups that ordinarily qualify for exemptions, its terms exclude fraternities that are not connected with Indiana University. There are twenty-two colleges or universities in Indiana affiliated with nationally recognized Greek fraternities.[6] At a number of those colleges, including Indiana University Bloomington, fraternities own property that can be exempted from property tax. Rather than giving the same retroactive application to all property-owning fraternities (or

---

[6] Number is based on information provided in 1<u>The College Blue Book Narrative Descriptions</u> (MacMillan Reference USA, 33rd ed. 2006).

sororities for that matter) across the state, Section 44 specifies a narrow group within the larger class.

It is difficult to imagine a piece of legislation more "special" than Section 44, which applies only to: (1) fraternities, (2) affiliated with Indiana University, (3) who were previously granted property tax exemptions, but (4) who have paid property tax in two specified years because of a failure to file an exemption. Taken together, these requirements identify the three taxpayers so clearly that the accompanying Fiscal Impact Statement by the Legislative Services Agency summarized the effect of the relevant section in rather telling terms. In describing Section 44, it says "[t]his provision would retroactively grant a property tax exemption to a student fraternity at Indiana University . . . ." OFFICE OF FISCAL AND MANAGEMENT ANALYSIS, INDIANA LEGISLATIVE SERVICES AGENCY, FISCAL IMPACT STATEMENT HOUSE BILL 1814, 4 (ver. 8 2003) available at http://www.in.gov/legislative/bills/2003/PDF/FISCAL/HB1814.008.pdf (emphasis added). Under even the gentlest scrutiny, the statute at issue here is revealed to be special.[7]

**Examining the Taxpayers' Arguments Supporting a Special Law**

Although Section 44 is a "special" law, this does not make it per se unconstitutional. Rather, the conclusion that a law is "special" is only a threshold determination in analyzing a law's constitutionality. Kimsey, 781 N.E.2d at 692. As we have stated "the drafters [of the 1851 Constitution] expressed a preference for general laws, but they also recognized that special laws were sometimes necessary." Moseley, 643 N.E.2d at 300. Thus, even if a law is special, it may still be constitutionally permissible.

Article IV, Section 23 declares that "[i]n all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and

---

[7] There is little need to create special statutes camouflaged by population limits, as such qualifications do not make a statute constitutional per se. Kimsey, 781 N.E.2d at 691; Hoovler, 668 N.E.2d at 1233 n.3. It would be preferable, and more useful for all involved, if the General Assembly would simply accompany special laws with "legislative findings as to the facts justifying the legislation's limited territorial application." Kimsey, 781 N.E.2d at 691.

7

of uniform operation throughout the State." Thus, to be unconstitutional under Section 23, a law must not only be special but subject to a law of general applicability. Kimsey, 781 N.E.2d at 689-90.

When examining special legislation to determine if a general law can be made applicable, we ask "whether there are inherent characteristics of the affected [class] that justify [special] legislation." Kimsey, 781 N.E.2d at 692. See also State ex rel. Att'y Gen. v. Lake Superior Court, 820 N.E.2d 1240, 1249 (Ind. 2005). This inquiry leads us to consider 1) whether "in fact [the statute] is meaningful in a variety of places or whether relevant traits of the affected area are distinctive such that the law's application elsewhere has no effect," Kimsey, 781 N.E.2d at 692, and 2) if those "unique circumstances . . . rationally justify the legislation." Lake Superior Court, 820 N.E.2d at 1249. Succinctly then, we look at whether there is something about the class that makes it unique and whether that uniqueness justifies the differential treatment.

In our more recent cases, we have typically looked first to whether some uniqueness exists in the class specified in the special law. In Moseley, for example, we considered whether the statute authorizing riverboat gambling in select Indiana counties could have been made generally applicable. 643 N.E.2d at 300-01. In concluding that it was not, we noted that unlike other areas in the state, the counties specified in the statute were "home to a suitable body of water." Id. at 301. This uniqueness made it permissible for the special law to apply to only those specified counties. Id. Similarly, in State v. Hoovler, we held that a statute that by its terms applied only to Tippecanoe County did not violate Article IV, Section 23. 668 N.E.2d at 1235. This decision was based in part on the fact that Tippecanoe County was the only county in Indiana in which the county itself was subject to possible Superfund liability under federal environmental laws. Id. Again, in Lake Superior Court, we found that the "long and tortured history of property taxation in Lake County," 820 N.E.2d at 1249, which included a one-of-a-kind situation in which only a few industrial sites were responsible for a large percentage of property tax revenue, constituted unique circumstances that warranted "local legislation to deal with a reassessment problem of a scale and complexity not found elsewhere in the state." Id. at 1250.

By contrast with the cases above, there is nothing unique about the class specified in Section 44. The taxpayers provide no meaningful explanation as to why the problems they face are any different than those faced by landowning fraternities and sororities throughout the state. Certainly, as the Monroe County Auditor notes, there is nothing supporting the contention that "education cost[s are] a problem unique to Indiana University students living in Monroe County. [Nor is there] evidence to suggest that tax years 2000 . . . and 2001 . . . were unique tax years." (Appellees' Br. at 8.)

In attempting to establish some basis for uniqueness, appellants argue that by "enacting Section 44 of Public Law 25602003 [sic], the General Assembly has determined that nonprofit entities that own property used for fraternities for students attending Indiana University are in greater need of fiscal relief that other nonprofit entities . . . ," because it is the state's goal to make higher education affordable. (Appellants' Br. at 10-11.) This rationale might identify unique characteristics of fraternities and sororities as a whole that could justify the special treatment of the entire class. It does not, however, identify anything unique about the three fraternities here that differentiate them from any other fraternity or sorority, at any other time, at any other college, in any other county.

Indeed, the problems college students and their parents face in financing higher education are well known and apply across the entire country and across all economic strata. As the fraternities themselves point out, the problem is so ubiquitous that Governor Kernan created a special taskforce to address the problem in the waning days of his administration. (Appellants' Br. at 10.)

Ultimately, the taxpayers' argument boils down to a claim that they are unique because they, and they alone, require relief from the consequences of their own oversight. This is hardly a fact that "justifies" some form of special treatment. In fact, it is little different than the case of Mr. John Carter and Mr. Joel Dixon who, in 1827, received from the legislature by act the deeds to land purchased by them from Mr. and Mrs. Moses Alderson. See 1827 Ind. Acts 50-51. The passage of the act was necessary because the warranty deeds that the Aldersons provided to Carter and Dixon were not properly sealed before the death of Mr. Alderson. Id. In other words,

9

the act allowed the named purchasers, whose own inattentiveness to the contract put them into a difficult set of circumstances, to circumvent the ordinary rules of property transfers.

## Conclusion

To the drafters of the 1851 Constitution, this was precisely the sort of "special law" that caused so much consternation, consumed so much time, and created so much inequality that it required a constitutional provision to eliminate. We conclude the trial court was correct to uphold the Constitution, and we affirm its judgment.

**Dickson, Boehm, and Rucker, JJ., concur.**
**Sullivan, J., dissents with separate opinion.**

**Sullivan, Justice, dissenting.**

My disagreement with my colleagues' approach to assessing the constitutionality of "special legislation" is of record and I incorporate it by reference rather than prolong the discussion here. See City of South Bend v. Kimsey, 781 N.E.2d 683 (Ind. 2003) (Sullivan, J., dissenting); State v. Hoovler, 668 N.E.2d 1229 (Ind. 1996) (Sullivan, J., concurring in result). Suffice it to say that I believe the Court's analysis in today's case violates in several respects the Separation of Functions Clause proscription on the Judiciary "exercis[ing] any of the functions" of the Legislature. Ind. Const. art. III, § 1.

1.     The Court today expands the legislative classifications subject to its ongoing review of which compromises made by the Legislature are beyond its power and which are not. Until now, this review has focused on geographical classifications: whether the Riverboat Gambling Act could have different referendum rules for Lake and Porter Counties;[8] whether Unigov could be limited to Marion County;[9] a special environmental tax to Tippecanoe County;[10] a special annexation regime to St. Joseph County.[11] Now a bill that applies to only one of the state's universities is also "special legislation."

This expansion was predictable, I suspect my colleagues would say, from the discussion in Kimsey correlating the requisite analysis under Article IV, Section 23 ("Section 23"), with that under the Privileges and Immunities Clause.[12] In any event, it makes clear just how deeply the Court believes it is entitled to probe in its assessment of constitutionality—far deeper than I believe the Separation of Functions Clause permits.

2.     Some day soon, I predict, the Court will have to face the question of whether striking altogether a statute it deems is unconstitutional is the proper remedy when it finds Section 23 has been violated as opposed to requiring all those included in the class to benefit from it. Could fraternities at other colleges (rather than the Monroe County Auditor) have

---

[8] Ind. Gaming Comm'n v. Moseley, 643 N.E.2d 296 (Ind. 1994).
[9] Dortch v. Lugar, 266 N.E.2d 25 (Ind. 1971).
[10] Hoovler, 668 N.E.2d 1229.
[11] Kimsey, 781 N.E.2d 683.
[12] Id.

11

brought this lawsuit contending that if the Legislature was going to extend this benefit to IU fraternities, the Constitution required that it be extended to them as well?

3. It is important to understand that the Court does not outlaw "special legislation." Indeed, it expressly permits the General Assembly to adopt special legislation—but only if the special legislation passes a test of the Court's own devising: a special law is nevertheless constitutional if there are "inherent characteristics of the affected [class] that justify" it. Slip op. at 8 (quoting Kimsey, 781 N.E.2d at 692). The text of Section 23 contains no such qualification on its requirement that "all laws shall be general, and of uniform operation throughout the State." That requirement is limited, to be sure, to situations "where a general law can be made applicable." Ind. Const. art. IV, § 23. But that limitation is the antithesis of the one imposed by the Court: permitting special legislation where "unique circumstances . . . rationally justify" it. Slip op. at 8 (quoting State ex rel. Att'y Gen. v. Lake Superior Court, 820 N.E.2d 1240, 1249 (Ind. 2005)).

It is only by using the Court's own test—a test, to repeat, really quite at odds with the text—that the Court is able to find the Riverboat Gambling Act, the Tippecanoe County Environmental Tax, etc., to be permissible under Section 23. There is no reason why those laws could not have been made generally applicable, the requirement of the text. They passed the Court's muster only because the Court found that unique circumstances rationally justified them. I respectfully submit that when the Court operates in this way, it is performing a legislative and not a judicial function.

As my earlier writings make clear, I would leave the determination of the legitimacy of these types of classifications to the Legislature.

4. It is pretty easy to imagine how the legislation here came about. After the IU fraternities in question blew the filing deadline and realized that they would be subject to tax, they were able to persuade members of the Legislature to introduce a bill to provide them relief. Both the House and Senate found this request to be appropriate, as did the Governor. In writing up the bill, the General Assembly made, the Court says, a fatal mistake by identifying the

fraternities as being at "Indiana University."  It is clear from the Court's opinion that if this exemption applied to all "twenty-two colleges or universities in Indiana affiliated with nationally recognized Greek fraternities," rather than just Indiana University, the bill would have been just fine.  Slip op. at 7.

My guess is that the reason none of the fraternities at other schools are listed is because none of them missed the filing deadline.  It is inconceivable to me that the Legislature would have refused to provide the same relief to a fraternity at Purdue or DePauw or Wabash if one or more of them had been asleep at the switch like the ones at IU were.  I think the Court's answer would be that this legislation would be constitutional as written if only the General Assembly had told the Court in "legislative findings as to the facts justifying the legislation's limited . . . application" that the IU fraternities were unique.  Slip op. at 7, n.7 (quoting Kimsey, 781 N.E.2d at 691).  Mandating such findings as the price for upholding legislation also impinges, I submit, upon legislative prerogatives.

13