ATTORNEYS FOR PETITIONERS:
**MARK J. CRANDLEY**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA E. REAGAN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

THE CITY OF GREENFIELD and )
THE GREENFIELD FIRE )
PROTECTION TERRITORY, )
)
Petitioners, )
)
v. ) Cause No. 49T10-1111-TA-67
)
THE INDIANA DEPARTMENT OF )
LOCAL GOVERNMENT FINANCE, )
)
Respondent. )

FILED
Nov 19 2014, 1:00 pm
CLERK
of the supreme court,
court of appeals and
tax court

ON APPEAL FROM A FINAL DETERMINATION OF
THE DEPARTMENT OF LOCAL GOVERNMENT FINANCE

**FOR PUBLICATION**
**November 19, 2014**

FISHER, Senior Judge

The Greenfield Fire Protection Territory, which was established by the City of Greenfield and the unincorporated area of Center Township, Hancock County, Indiana (Center Township), is the only fire protection territory in Hancock County that has a uniform tax rate. In 2011, the Department of Local Government Finance (DLGF) issued a final determination pursuant to Public Law 172-2011, Section 164 that adjusted the

Territory's general fund levy for the 2012 budget year. The City of Greenfield and the Territory have appealed that final determination, claiming that it is arbitrary and capricious, not supported by substantial evidence, and in contravention of Article 4, Sections 22 and 23 of the Indiana Constitution. Upon review, the Court reverses.

## BACKGROUND

Prior to 2008, Center Township had individual contracts with the Greenfield Fire Department for fire protection and emergency response services. (See Cert. Admin. R. at 1.) The residents of Center Township, however, paid significantly less for the same services than the residents of the City of Greenfield.[1] (See Cert. Admin. R. at 1.)

In March 2008, the legislative bodies of the City of Greenfield and Center Township adopted an identical ordinance and resolution that approved their Interlocal Agreement to establish the Territory under Indiana Code § 36-8-19-1 et seq. (See Cert. Admin. R. at 9-30.) (See also Cert. Admin. R., App. A (Audio of DLGF Hr'g) at 33:04.) The Interlocal Agreement provided that the City of Greenfield, as the provider unit,[2] would establish a general fund for operating and maintenance expenses as well as an equipment replacement fund for equipment and housing needs. (See Cert. Admin. R. at 12.) In addition, the Interlocal Agreement stated that the Territory would prepare an annual budget, subject to the approval of both the Center Township Trustee and the Greenfield Common Council, and establish tax rates and levies to fund the budget. (See Cert. Admin. R. at 12.) While the Interlocal Agreement provided that the City of

---

[1] For instance, in 2008, Center Township's residents paid $0.0607 per $100 of net assessed value for fire protection services while the City of Greenfield's residents paid $0.2040 per $100 of net assessed value. (See Cert. Admin. R. at 53, 111.)

[2] The "provider unit" is responsible for providing the fire protection services within a fire protection territory. See IND. CODE § 36-8-19-3 (2011).

Greenfield and Center Township could establish different tax rates that were to be uniformly applied to the taxable property in each locality, the actual goal was to impose the same tax rate in both localities. (See Cert. Admin. R. at 11, 48.)

In 2009, the Territory adopted its first annual budget and established a uniform tax rate of $0.2414. (See Cert. Admin. R. at 48, 53, 87-88; DLGF Hr'g at 21:45.) In 2010, the uniform tax rate increased to $0.2566, but by 2011, it had decreased to $0.2436. (See Cert. Admin. R. at 53, 90-91, 94.)

On May 10, 2011, the legislature enacted Public Law 172-2011, Section 164, a non-code provision,[3] which provided:

> (a) The [DLGF] shall review the tax rates and levies for each fire protection territory that is located in Hancock County and that has a uniform tax rate throughout the territory. The [DLGF] shall reconsider adjusting the tax levies for the participating units and whether different tax rates for fire protection services should be applied for the participating units included within the territory. In conducting its review, the [DLGF] shall consider the following factors and discuss the factors with each participating unit in the territory:
> (1) The population and change in population of each unit in the territory.
> (2) The assessed valuation and change of assessed valuation of real property in each unit in the territory.
> (3) The cost of providing fire service to each unit in the territory.
> (4) Comparisons to other jurisdictions providing similar fire service.
> (5) Previous tax rates and levies for fire protection.
> (6) Future needs and planned or expected expenses for fire service.
> (7) Other factors as determined by the [DLGF].
> (b) This SECTION expires June 30, 2012.

P.L. 172-2011, § 164 (2011) (repealed 2012). The DLGF subsequently notified all

---

[3] A non-code provision "'is one which, though enacted with a piece of legislation, is not codified within the Indiana Code.'" St. George Serbian Orthodox Church v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals, 905 N.E.2d 539, 541 n.6 (Ind. Tax Ct. 2009) (citation omitted).

interested parties that it would conduct a public hearing, accept evidence, and then make a decision whether it would adjust the Territory's tax rates and levies based on the factors set forth in Public Law 172-2011, Section 164. (See Cert. Admin. R. at 34-35.)

Approximately 70 individuals appeared at the DLGF's hearing on September 15, 2011, to either advocate for or oppose an adjustment of the Territory's tax rates and levies. (See Cert. Admin. R. at 39-43.) The advocates sought a reduction of the Territory's tax rates and levies on the bases that it lacked transparency,[4] it had one of the highest fire protection tax rates in Hancock County,[5] and its use of a uniform tax rate had caused Center Township's fire protection tax rates to triple. (See Cert. Admin. R. at 45, 63-65, 69-72; DLGF Hr'g at 14:35, 1:14:12.) The opponents, on the other hand, claimed that the Territory's use of a uniform tax rate had not caused Center Township's tax rates to triple,[6] but merely ensured that the City of Greenfield and Center Township bore their fair share of the Territory's fire protection and emergency response service

---

[4] More specifically, the advocates claimed that their interests have never been adequately represented and that the City of Greenfield might have improperly padded its budget by permanently shifting $800,000 in salary and benefit expenses to the Territory when it was established. (See Cert. Admin. R. at 44, 61, 73-74; DLGF Hr'g at 7:51, 14:35.)

[5] The advocates maintained that Center Township's tax rates were too high in relation to its population and the services its residents received, given the lack of any new fire protection services or significant budgetary increases upon the establishment of the Territory. (See Cert. Admin. R. at 63-65, 69-72; DLGF Hr'g at 4:11, 14:35.) Moreover, the advocates claimed that Center Township required fewer fire runs than the City of Greenfield because it contained few roofed-structures and an abundance of farmland that was unlikely to catch fire because it was either frozen, snow-covered, or drenched in rain during half of the year. (See Cert. Admin. R. at 61; DLGF Hr'g at 7:51, 1:08:51.)

[6] The opponents explained that the sharp increase in Center Township's tax rate resulted from the convergence and interplay of 1) the termination of Center Township's subsidies for fire protection, 2) the elimination of property tax replacement credits, 3) the phase-in of circuit breaker credits, and 4) the enactment of the supplemental homestead deduction. (See Cert. Admin. R. at 50, 52-53; DLGF Hr'g at 24:36, 33:04, 35:15, 38:50.)

costs rather than arbitrarily splitting the costs between the two localities.[7] (See, e.g., Cert. Admin. R. at 56-57; DLGF Hr'g at 45:45, 1:03:22.) Moreover, the opponents urged the DLGF to refrain from adjusting the Territory's tax rates and levies because it was fiscally responsible given that its budget had remained nearly flat since its creation.[8] (See Cert. Admin. R. at 51; DLGF Hr'g at 24:36, 32:15, 32:30, 32:46.) The opponents also claimed that a tax rate reduction would jeopardize the safety of firefighters, impair the Territory's ability to build a new fire station in Center Township and to acquire new fire engines, and possibly burden its mutual aid partners as well as six smaller townships that had contracts with the Territory for emergency response services. (See DLGF Hr'g at 50:38, 58:37, 1:18:53, 1:25:13.)

On October 17, 2011, the DLGF issued a final determination that reduced the Territory's general fund levy from $2,345,015 to $2,060,260 for the 2012 budget year. (Compare Cert. Admin. R. at 94 with 112.) In so doing, the DLGF effectively eliminated the Territory's use of a uniform tax rate by setting the City of Greenfield's maximum general fund levy at $1,790,312 and Center Township's maximum general fund levy at $269,948. (See Cert. Admin. R. at 104, 112.) The DLGF did not adjust the tax rate or levy for the equipment replacement fund. (See Cert. Admin. R. at 112.)

---

[7] The opponents claimed that providing fire protection services in Center Township affected the Territory's costs because greater distances increased fuel costs and a lack of hydrants required the use of tanker trucks to haul water. (See Cert. Admin. R. at 59; DLGF Hr'g at 50:38.) The opponents, however, did not quantify any of these purported additional costs. (See Cert. Admin. R. at 108.)

[8] The opponents claimed that when compared to six other comparable fire protection service providers, the Territory had the lowest per capita cost as well as the next to lowest cost per $100 of net assessed value. (See Cert. Admin. R. at 54-55; DLGF Hr'g at 45:45.) Moreover, they explained that a comparison of run loads, paid staff, fire stations, and tax rates with four other comparable service providers showed that the Territory had learned to do more with less. (See Cert. Admin. R. at 56, 66-68; DLGF Hr'g at 50:38.)

On November 16, 2011, the City of Greenfield and the Territory initiated this original tax appeal. The Court heard the parties' arguments on June 18, 2012. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn a DLGF final determination bears the burden of demonstrating that it is invalid. See Brown v. Dep't of Local Gov't Fin., 989 N.E.2d 386, 388 (Ind. Tax Ct. 2013). Accordingly, the City of Greenfield and the Territory must show the Court that the DLGF's final determination is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law. See id.

## ANALYSIS

On appeal, the City of Greenfield and the Territory contend that the DLGF's final determination must be reversed because it is arbitrary and capricious and not supported by substantial evidence. (See Pet'rs' Appellate Br. ("Pet'rs' Br.") at 17-25.) Alternatively, the City of Greenfield and the Territory claim that the DLGF's final determination is invalid because Public Law 172-2011, Section 164 violates Indiana's Constitution by contravening the special legislation provisions of Article 4, Sections 22 and 23.[9] (See Pet'rs' Br. at 9-15.)

## I.

The City of Greenfield and the Territory claim that the DLGF's final determination is arbitrary and capricious and not supported by substantial evidence because it does not contain factual findings that reveal why it adjusted the Territory's general fund levy

---

[9] The City of Greenfield and the Territory have also claimed that Public Law 172-2011, Section 164 violates Article 4, Section 19 of the Indiana Constitution. (See Pet'rs' Appellate Br. ("Pet'rs' Br.") at 15-17.) Given its disposition of the case, however, the Court need not reach this issue.

for the 2012 budget year.[10]  (See Pet'rs' Br. at 17-18.)  The DLGF, however, maintains that the Court should affirm its final determination because it demonstrates that it adjusted the Territory's general fund levy after considering the factors set forth in Public Law 172-2011, Section 164 as well as all related evidence.  (See Resp't Resp. Br. at 5-7; Oral Arg. Tr. at 50-54.)

"'The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement.'"  Perez v. U.S. Steel Corp., 426 N.E.2d 29, 31 (Ind. 1981) (citation omitted).  Indeed, the fact-finding requirement keeps an agency within its jurisdiction, protects against careless or arbitrary action, and "insures that a careful examination of the evidence, rather than visceral inclinations, will control [its] decision."  Id. at 31-32.  The fact-finding requirement also ensures that the parties know the evidentiary bases upon which the agency's ultimate decision rests, helps them plan their cases for rehearing or judicial review, facilitates judicial review, and avoids judicial usurpation of administrative functions.  Id.

To that end, the Indiana Supreme Court has explained that an agency's findings of fact are satisfactory if they provide "'a simple, straightforward statement of what happened . . . stated in sufficient relevant detail to make it mentally graphic[.]'"  Id. at 33 (citation omitted).  Moreover, the agency's factual findings should reveal its analysis of the evidence as well as its determination of the relevant sub-issues and factual disputes that, collectively, are dispositive of the particular claim or the ultimate factual question

---

[10]  The City of Greenfield and the Territory explain that the DLGF's final determination does not 1) relate the tax rate adjustment to the factors set forth in Public Law 172-2011, Section 164, 2) sufficiently explain the DLGF's methodology, or 3) show that the DLGF considered Center Township's subsidy, the proportionality of the adjusted levy to the run data, and the effect of the adjustment on the Territory's personnel and equipment needs.  (See Pet'rs' Br. at 19-25.)

before the agency. Id. See also Pack v. Indiana Family & Soc. Servs. Admin., 935 N.E.2d 1218, 1223 (Ind. Ct. App. 2010). Accordingly, factual findings containing statements that the evidence either revealed or was "such and such," that a witness testified to "this or the other," or that an agency finds that a witness testified to "this or the other" are insufficient because the statements do not indicate what the agency found after examining all of the evidence. Perez, 426 N.E.2d at 33.

The DLGF's factual findings are contained in paragraphs 6 through 33 of its final determination. (See Cert. Admin. R. at 105-12.) Those paragraphs, however, contain very few factual findings that comport with the teachings of Perez and Pack. Indeed, paragraphs 6 through 15 and 31 through 32 merely identify the witnesses that offered written and oral testimony during the administrative process and restate portions of their testimony. (See Cert. Admin. R. at 105-07, 112.) Paragraphs 16 and 18 through 24 primarily contain the DLGF's reproductions of certain evidence, including the population changes, the assessed valuation changes, and the fire protection costs in the Territory and other areas. (Compare Cert. Admin. R. at 107-10 with 54, 56-58, 65, 68, 71.) Moreover, paragraph 33 appears to provide the DLGF's legal rationale for readjusting the Territory's levies, not a factual finding.[11] (See Cert. Admin. R. at 112.) Furthermore, even if paragraphs 6 through 33 of the DLGF's final determination contained sufficient factual findings, they reveal neither the DLGF's analysis of the evidence nor its rationale for reducing the Territory's general fund levy for the 2012 tax

---

[11] In addition, the factual findings in paragraphs 17 and 25 through 30 are questionable because they either misstate the evidence or use figures that have no apparent evidentiary basis. (Compare Cert. Admin. R. at 107, 111 with Cert. Admin. R. at 95-98; DLGF Hr'g 21:45, 50:38.) (See also Cert. Admin. R. at 75-76, 82 (indicating that the DLGF may have based its levy calculation on evidence from Center Township, Marion County rather than Center Township, Hancock County).)

year.

The lack of sufficient factual findings would typically require the Court to remand the matter to the DLGF. See Perez, 426 N.E.2d at 33-34; Pack, 935 N.E.2d at 1227-28. Here, however, the Court need not remand for this deficiency because the DLGF's final determination is invalid for an entirely different reason.

## II.

The City of Greenfield and the Territory have also claimed that Public Law 172-2011, Section 164 contravenes Indiana's Constitution by violating the special legislation provisions set forth in Article 4, Sections 22 and 23. (See Pet'rs' Br. at 9-15.) Article 4, Section 22 prohibits the enactment of special laws regarding sixteen enumerated subjects, including "the assessment and collection of taxes for State, county, township, or road purposes[.]" IND. CONST. art. 4, § 22. In turn, Article 4, Section 23 provides that "[i]n all the cases enumerated in [Section 22], and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." IND. CONST. art. 4, § 23. Consequently, the determination of whether a law is special or general is a threshold question when analyzing its constitutionality under both Article 4, Sections 22 and 23.[12] Alpha Psi Ch. of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty., 849 N.E.2d 1131, 1136 (Ind. 2006).

The City of Greenfield and the Territory claim that Public Law 172-2011, Section 164 is a special law because the Territory is the only fire protection territory to which the law applies. (See Pet'rs' Br. at 11.) On its face, Public Law 172-2011, Section 164

---

[12] Special laws pertain to and affect a particular case, person, place, or thing, as opposed to the general public. See Municipal City of South Bend v. Kimsey, 781 N.E.2d 683, 689 (Ind. 2003). In contrast, general laws apply "'to all persons or places of a specified class throughout the state.'" Id. (citation omitted).

states that it applies only to fire protection territories located in Hancock County with uniform tax rates.  See P.L. 172-2011, § 164.  The administrative record in this case indicates that while there are other fire departments in Hancock County, the Territory is the only fire protection territory in Hancock County with a uniform tax rate.  (See, e.g., Cert. Admin. R. at 54, 65, 67; DLGF Hr'g at 1:01:44, 1:03:16.)  Accordingly, the Court finds that Public Law 172-2011, Section 164 is a special law.  (See also Resp't Resp. Br. at 8; Oral Arg. Tr. at 58-59 (indicating that the DLGF does not dispute this finding).)

Because Public Law 172-2011, Section 164 is a special law, the Court now turns to the question of whether it violates Article 4, Section 22's prohibition against the enactment of a law concerning the assessment and collection of tax for township purposes.  The City of Greenfield and the Territory contend that Public Law 172-2011, Section 164 violates Article 4, Section 22 because it clearly concerns the assessment and collection of taxes for fire protection, a traditional function of township government.  (See Pet'rs' Br. at 11-13.)  This contention, however, misses the mark.

Several years ago, the Indiana Supreme Court determined that a special law that allowed a taxing unit to increase a county's existing tax rate did not violate Article 4, Section 22.  See State v. Hoovler, 668 N.E.2d 1229, 1233 (Ind. 1996).  The Supreme Court explained that the special law was constitutional because increasing a tax rate (i.e., the amount a taxpayer must pay in property tax) failed to implicate the assessment or collection of tax because it did not authorize any new property valuations or changes in the system of tax gathering.  See id.  See also REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002--VERSION A (Guidelines) (incorporated by reference at 50 IND. ADMIN. CODE 2-3-1-2 (2002 Supp.)), Bk. 2, Glossary at 21 (defining "tax rate" as the

percentage used to determine how much a taxpayer will pay in property taxes). Public Law 172-2011, Section 164 does not authorize new property valuations nor does it change the manner in which taxes are collected; instead, it merely provides for an adjustment to the Territory's existing tax levy (i.e., the amount it may collect in property tax for fire protection). See P.L. 172-2011, § 164; Guidelines, Bk. 2, Glossary at 20 (defining "tax levy" as the total revenue that a taxing unit (e.g., a township) may raise in property tax dollars annually). Consequently, Public Law 172-2011, Section 164 does not violate Article 4, Section 22. See Hoovler, 668 N.E.2d at 1233.

The City of Greenfield and the Territory have also claimed that Public Law 172-2011, Section 164 contravenes the special legislation provisions set forth in Article 4, Section, 23 of the Indiana Constitution. To be unconstitutional under Article 4, Section 23, a law must be both special and subject to a law of general applicability. Alpha Psi, 849 N.E.2d at 1137. To determine whether special legislation is subject to a law of general applicability, the Court must examine "'whether there are inherent characteristics of the affected [class] that justify [special] legislation.'" Id. at 1137-38 (citations omitted). In so doing, the Court must consider 1) if the statute "'is meaningful in a variety of places or whether relevant traits of the affected area are distinctive such that the law's application elsewhere has no effect,' and 2) if those 'unique circumstances . . . rationally justify the legislation.'" Id. at 1138 (citations omitted). In other words, the Court must determine "whether there is something about the class that makes it unique and whether the uniqueness justifies the differential treatment." Id.

The City of Greenfield and the Territory assert that Public Law 172-2011, Section 164 is unconstitutional special legislation under Article 4, Section 23 "in its rawest form"

because the legislature could have drafted the law as a general law as there is nothing unique about the Territory, the sole fire protection territory in Hancock County with a uniform tax rate. (See Pet'rs' Br. at 14-15.) The DLGF counters that Public Law 172-2011, Section 164 could not have been made generally applicable, however, given two unique circumstances: 1) the manner in which the Territory was established and, 2) the Territory's use of a uniform tax rate that unfairly shifted the tax burden from the City of Greenfield to Center Township.[13] (See Resp't Resp. Br. at 10; Oral Arg. Tr. at 44-48, 60-61.)

In resolving Article 4, Section 23 challenges, courts typically examine whether some uniqueness exists in the class specified in the special legislation. See Alpha Psi, 849 N.E.2d at 1138. For instance, the Indiana Supreme Court upheld a special law that applied solely to Tippecanoe County because it was the only county in the state that was subject to possible Superfund liability under federal environmental protection laws. See Hoovler, 668 N.E.2d at 1235. Similarly, the Supreme Court upheld special legislation that applied only to Lake County because it had well-established issues with its overall property tax system and a uniquely comprised tax base. See State ex rel. Att'y Gen. v. Lake Sup. Ct., 820 N.E.2d 1240, 1249-50 (Ind. 2005). In both cases, certain administrative findings, judicial findings, or legislative actions corroborated the existence of unique circumstances that justified the special legislation. See id. at 1249-50; Hoovler, 668 N.E.2d at 1234-36.

---

[13] More specifically, the DLGF has claimed that there might have been some impropriety in the establishment of the Territory because two of Center Township's four representatives were employees of the City of Greenfield and Center Township residents could not then, and continue to be barred from, using the vote to alter the City of Greenfield's government. (See Oral Arg. Tr. at 46-47.) (But see Cert. Admin. R. at 21 (certifying that no eligible Center Township resident filed a petition objecting to the establishment of the Territory).)

Contrary to the DLGF's claim, the certified administrative record in this case does not suggest that either the Territory or the circumstances surrounding its establishment are unique. This conclusion is supported by three other provisions of Public Law 172-2011, which indicate that Section 164 could have been made generally applicable. For instance, Section 159 states:

> [a] member of the legislative body of a unit may not vote on a proposed ordinance or resolution authorizing the unit to become a party to an agreement to join or establish a fire protection territory if that member is also an employee of:
>> (1) another unit that is a participating unit in the fire protection territory; or
>> (2) another unit that is proposing to become a participating unit of a fire protection territory.

P.L. § 172-2011, § 159 (2011) (codified at IND. CODE § 36-8-19-6.3 (2011)). Section 163 addressed the establishment of fire protection territories throughout the state by requiring legislative bodies to follow additional procedures before adopting an ordinance or resolution to establish a fire protection territory. See P.L. 172-2011, § 163 (2011) (repealed 2012).[14] Thus, these provisions addressed conflicts of interest and transparency concerns in the establishment of fire protection territories generally on a statewide basis, which is one of the unique circumstances that the DLGF claimed justified the enactment of Public Law 172-2011, Section 164. The enactment of these two laws therefore suggests that Public Law 172-2011, Section 164 likewise could have been made generally applicable, as they addressed the matters that the DLGF alleged were unique in the establishment of the Territory on a statewide basis. Finally, Section 160 provides "[i]f a uniform tax rate is levied upon all taxable property within a territory

---

[14] The fact that this non-code provision expired in 2012 is of no consequence because that very year, the legislature amended Indiana Code § 36-8-19-6 by adopting the requirements set forth in Public Law 172-2011, Section 163. Compare IND. CODE § 36-8-19-6(b) (2012) with P.L. 172-2011, § 163 (2011) (repealed 2012).

upon the formation of the territory, different tax rates may be levied for the participating units included within the territory in subsequent years." See P.L. 172-2011, § 160(b) (codified at IND. CODE § 36-8-19-7(b) (2011)). This section clearly allows all fire protection territories throughout the state to adopt different tax rates despite the initial use of a uniform tax rate, again the very thing the legislature authorized the DLGF to do here pursuant to Public Law 172-2011, Section 164.

The certified administrative record and the three generally applicable provisions of Public Law 172-2011 regarding fire protection territories indicate that Public Law 172-2011, Section 164 could have been written to apply throughout the state because neither the Territory nor the circumstances surrounding its establishment are unique. Therefore, Public Law 172-2011, Section 164 contravenes the special legislation provisions set forth in Article 4, Section 23 of the Indiana Constitution. Accordingly, the DLGF's final determination that adjusted the Territory's general fund levy for the 2012 budget year pursuant to Public Law 172-2011, Section 164 is invalid.

## CONCLUSION

For the above-stated reasons, the final determination of the DLGF is REVERSED. The Court REMANDS this matter to the DLGF with instructions to reinstate the City of Greenfield's and Center Township's original levies and tax rates for the 2012 budget year and take any other actions consistent with this opinion.