RUCKER, J.,
dissenting.
This Court has long adhered to the rule that “for a special law to be imposed, it must be reasonably related to inherent characteristics of the territory in which it is applied, and apply equally to those who share those characteristics.” Mun. City of S. Bend v. Kimsey, 781 N.E.2d 683, 689 (Ind.2003): accord Collins v. Day, 644 N.E.2d 72, 78-79 (Ind.1994). But the Court’s opinion today departs from this long-standing requirement instead for an analysis that permits special legislation upon a finding of “unique circumstances” as proffered by the State in defending the challenged legislation. Applying precedent, as we should, I do not believe speculations on what the legislature could have found should substitute for actual findings, reflecting inherent characteristics of the affected class. Therefore, I respectfully dissent from the majority’s conclusion that the statute at issue is constitutionally permissible.
Although listed in seemingly generally applicable terms, Indiana Code section 3-11-1.5-3.4 only applies to “a county with a board of elections and registration established under IC 3-6-5.2.” Ind.Code § 3-ll-1.5-3.4(a). And Chapter 3-6-5.2 “applies to a county having a population of more than four hundred thousand (400,-000) but less than seven hundred thousand (700,000).” I.C. § 3-6-5.2-1. Simply put, this statute applies only to Lake County.[14] Accordingly, no one disputes that Indiana Code section 3-11-1.5-3.4 is special legislation.[15] And such “special legislation may be constitutional if it is based on distinct characteristics of the affected locality.” SMDfund, Inc. v. Fort Wayne-Allen Cty. Airport Auth., 831 N.E.2d 725, 731 (Ind.2005) (emphasis added).
The State argues that the legislation “is justified by the abnormally large number of small precincts in [Lake] [C]ounty as compared to all others.” Br. of Appellant at 9. The State claims: “This uniquely high number of small precincts likely leads to administrative inefficiencies and the Lake County election board preliminarily estimated that it carried substantial unnecessary financial burdens.” Id. at 9-10 (emphasis added). Thus, according to the State: “The General Assembly was justified in enacting special legislation to address this problem that is unique to Lake County.” Id. at 10. In like vein, the majority concluded that “Lake County is not sufficiently unique merely because it has small precincts,” op. at 143 (emphasis omitted), but that “the abnormal number of small precincts in Lake County is a defining characteristic that is sufficiently distinctive to justify the statute.” Id. at 143-44 (emphasis added). I do not share in the majority’s view, for two reasons.
First, there is nothing to demonstrate that the legislature made such a determination. Had the legislature in fact determined that the number of small precincts [16] in Lake County was so significant *146 as to justify the disparate treatment imposed by the statute such a determination would not be binding on this Court but rather entitled to deference. But this is so only if the record supported that the legislature made such a finding, not merely that the evidence shows that it could have. Regarding matters of constitutional proportion such as this, our jurisprudence does not support the majority’s assumption that we simply presume the legislature did so. In Indiana Gaming Comm’n v. Moseley, 643 N.E.2d 296 (Ind.1994), for example, we affirmed the special treatment of Lake County pursuant to the statute authorizing riverboat gambling because “the legislature decided to permit a particular form of gambling!,] identified the universe of Indiana counties suitable to host riverboat gambling [and limited] the locations of riverboats to the specified counties [based on the] fact that not every county is home to a suitable body of water ... [and] the distinctions drawn between Lake County and the others fit this purpose of this local law.” Id. at 301. In State ex rel. Atty. Gen. v. Lake Super. Ct., 820 N.E.2d 1240 (Ind.2005), we acknowledged that “administrative findings, judicial findings, and legislative action all point[ed] to a unique circumstance created by uneven assessment practices in various parts of Lake County[,]” such as “the long and tortured history of property taxation in Lake County, described in Matonovich v. State Bd. of Tax Comm’rs, 705 N.E.2d 1093, 1095 (Ind.Tax Ct.1999) as ‘an endemic problem with the uniformity of assessments within classes of property.’ ” Id. at 1250, 1249. And although we found the statutes in question to be special legislation in violation of Article 4, Section 22, we rejected plaintiffs’ Article 4, Section 23 claim because “[w]e [were] directed to no comparable set of circumstances in any other county producing such widespread tax inequities and unusual issues of valuation. [Accordingly,] [t]hese conditions readily justified] local legislation to deal with a reassessment problem of a scale and complexity not found elsewhere in the state.” Id. at 1250. Conversely, there is no evidence in the record demonstrating that the legislature found the sheer number of Small Precincts in Lake County to be so disproportional to those in other counties or create such a problem of epidemic proportion that it required specialized attention.[17] Other than the State’s *147 bare assertions on appeal, there is simply nothing in the record to support that the legislature reached such a conclusion.
Second, regarding the record before us I make the following observations. As this Court has previously explained: “Article [4] issues will be simplified if [the specified municipality is identified by name], accompanied by legislative findings as to the facts justifying the legislation’s limited territorial application.” Kimsey, 781 N.E.2d at 691. It is important to note that the legislature did not identify Lake County in Section 3-11-1.5-3.4, but rather determined that the statute should be applied generally to any county that fits the specified criteria. But here, other than a survey of voter counts, which demonstrates that Lake County had the highest number of Small Precincts in the state as of June 1, 2014, there is nothing to indicate anything inherently characteristic about “a county with a population between four hundred thousand (400,000) and seven hundred thousand (700,000)” to warrant specialized treatment based on the sheer number of Small Precincts. The majority declares: “Because the rest of the counties in the state have significantly fewer small precincts, we decline to second-guess the legislature’s decision not to set up a Small Precinct Committee in counties that don’t need it.” Op. at 143 (footnote omitted). But whether such committees are needed misses the mark. In analyzing whether such special legislation is constitutionally permissible, we must assess whether there are inherent characteristics to justify the legislation not whether our legislature has determined that there are certain “counties that don’t need it.”
It is true that when examining a challenge to Article 4, Section 23 “courts place the burden upon the challenger to negative every conceivable basis which might have supported the classification.” Collins, 644 N.E.2d at 80[18] (quotation omitted); accord Kimsey, 781 N.E.2d at 694. But “[w]hen this Court in Collins used the phrase ‘negative every conceivable basis,’ this did not eviscerate the two-prong constitutional test established; rather, it merely emphasized the importance of appropriate legislative deference, especially with regard to legislative classifications.” Paul Stieler Enters., Inc. v. City of Evansville, 2 N.E.3d 1269, 1277 (Ind.2014) (alteration omitted) (quoting Collins, 644 N.E.2d at 80). And here the class is defined as a county with a population between four hundred thousand and seven hundred thousand, not “Lake County” but “the apparent reasons for limiting the application of the statutes in question are not related to population.” Lake Super. Ct., 820 N.E.2d at 1248.
We have declared the test for a constitutionally permissible special law as follows, “for a special law to be imposed, it must be reasonably related to inherent characteristics of the territory in which it is applied, and apply equally to those who share those characteristics.”[19] Kimsey, 781 N.E.2d at 689 (emphasis added). *148 Thus, the mere presence of unique circumstances may not be sufficient in all instances to establish that special legislation is constitutionally permissible. A finding of “unique circumstances” is only relevant to our determination if such circumstances demonstrate “inherent characteristics of the affected locale.” Id. at 692. Otherwise the legislature would be able to circumvent the Section 23 prohibition against special legislation for any locality on the basis of any “unique circumstance” no matter how insignificant. or fleeting the circumstance may be. . “When Kimsey speaks of a ‘class’ it does not mean a particular group defined in a particular statute, but rather the broader classification to which the particular group belongs. Were it otherwise, the General Assembly could grant privileges to any group, no matter how small and specialized, by simply drafting legislation that self-defined the ‘specified class.’ This would produce a situation no different than that prior to the enactment of the 1851 Constitution and render useless the provisions of Sections 22 and 23.” Alpha, Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cty., 849 N.E.2d 1131, 1136 (Ind.2006).
There is nothing in the record before us that establishes that low voter counts are an inherent characteristic of “a county with a board of elections and registration” “having á population of more than four hundred thousand (400,000) or less than seven hundred thousand (700,000)” generally speaking or that this is an ongoing and systematic problem plaguing only Lake County specifically. We previously found a statute authorizing a tax exemption to only a few fraternities at Indiana University to be unconstitutional special legislation in part because “there [wa]s nothing supporting the contention that ‘education cost[s were] a problem unique to Indiana University students living in Monroe County [nor was there] evidence to suggest that tax years 2000 ... and 2001 ... were unique tax years.’ ” Pi Kappa Phi Fraternity, 849 N.E.2d at 1138 (quotation omitted). Indeed, the survey in the present case merely reflects one voter counts summary as prepared in 2014, not an ongoing and systematic problem in Lake County as compared to other counties throughout the state. Contrary to the majority view, specialized treatment of the small voter precincts in Lake County is no different than the tax exemption afforded a few fraternities at Indiana University, which we rejected as unconstitutional. Our reasoning in Kimsey has resonance here:
In this case, several different explanations were offered to justify the subsection’s application only in counties of 200,000 to 300,000 population-. But these reasons were all couched in terms of characteristics of St. Joseph County, not necessarily those possessed by a county of this population size.... But none of these justifications are inherent in the population range and none turn on facts unique to St. Joseph County. Preserving rural land near urban areas or preventing competing annexation by different municipalities may indeed be legitimate concerns, but there is no basis to conclude they are unique to St. Joseph County.
Kimsey, 781 N.E.2d at 694. The same rationale applies in this case. More than half of the voter precincts in over a dozen counties constitute small precincts. And although the State claims on appeal the statute “is justified by Lake County’s unique and undesirable status among Indiana eounties[,]” Br. of Appellant at 11, there is no direct evidence to support that the legislature determined a county with the highest number of small precincts to be less desirable than the fifteen other *149 counties that are financing more than fifty-percent small precincts.
Although not raised by either party, the record reflects the impact today’s decision -will have on the voting power of those cities affected by the statute’s mandatory consolidation.[20] It will be drastically diminished. While this point alone is not dispositive of Buncich’s Section 23 claim the disparate impact on the voting power of the citizens in Lake County — Gary in particular- — cannot be ignored. It is undeniable that the city of Gary has the most small precincts under review.[21] Of the 174 small precincts in all of Lake County under scrutiny, 57 of those precincts (32.76%) are located in the city of Gary alone, which encompasses 105 precincts in total. Essentially, 54.29% of Gary’s precincts will be at risk of consolidation as mandated by Indiana Code section 3-11-1.5-3.4. And although couched as general legislation to identify “the potential savings in the administration of elections resulting from the combination of precincts[,]” I.C. § 3 — 11— 1.5 — 3.4(e)(3), still we cannot turn a blind eye to the impact this legislation has on a citizen’s individual or collective voting capacity.[22] The elimination of these precincts will undeniably diminish the collective voting strength of the city of Gary by reducing the number of votes it may cast when filling legislative, circuit court, or prosecutorial vacancies. Precinct committee persons are charged with filling vacancies in legislative and local offices. I.C. §§ 3-13-1-5; 3-13-1-6; 3-13-5-1; 3-13-11 — 3.[23] And each committee person is entitled to one vote. I.C. § 3-13-5-4(c). Reducing the number of these officials— possibly in half — directly minimizes the strength of the voters in Gary by reducing *150 the total votes they currently cast in favor of filling candidates or seats for legislative or local vacancies. That is not to say that Gary, or any other city throughout the state, is in any way “entitled” to have a greater influence in the appointment of any official. Nevertheless, when considering the disparate treatment imposed by our state legislature on any one locality we would be remiss to decline to recognize such an impact simply because of the political implications such discussions conjure up.
In sum, the high number of small precincts based on one compilation of voter counts does not constitute the kind of inherent or distinctive characteristics needed to justify the special legislation imposed upon Lake County. And this is especially so considering the impact this legislation will have on voting strength. It is certainly the case “the challenging party must negate every conceivable basis which might have supported the classification [and t]his may be done by presenting evidence establishing the lack of distinct characteristics ...” Kimsey, 781 N.E.2d at 694 (internal quotation omitted). Here Buncich has met this burden by establishing that small precincts are a pervasive problem in over two dozen counties throughout the state. Accordingly, I would affirm the trial court’s judgment.

. Lake County is the only county that fits this criteria.

. "Indiana Code Section 3-11-1.5-3.4 is special legislation because it applies only to Lake County and none of Indiana's ninety-one other counties!.]” Br. of Appellant at 12-13; accord Br. of Appellee at 8 ("Lake County is the only county in Indiana which meets this description.”).

.For the purposes of this appeal, a "Small Precinct” is a "precinct[] within the county [with] fewer than five hundred (500) active voters (as defined in IC 3-11-18.1-2) as of June 1, 2014[.]” I.C. § 3-ll-1.5-3.4(e)(l).

. A review of the small precinct totals as submitted by the plaintiffs in this case reveals that small precincts constitute 20.83% of Indiana's precincts with active voters and there are twenty-eight counties with one-third or more small precincts in Indiana. App. at 104-06. While Lake County is the second largest county, it ranks twenty-fifth on the list for the highest percentage of small precincts in the state with only 33.46% of its precincts classified as "small.” Id. Ohio and Benton Counties top the list at 81.82% and 80%, respectively. Martin,. Clinton, Crawford, Newton, Vermillion, Warren, Pike, Fayette, Union, Davies, Posey, Cass, and Switzerland Counties all have more than 50% small precincts, ranging from 72.22% to 50% respectively. Id. Rush, Perry, Pulaski, Fountain, Miami, Knox, Greene, Whitley, and Jasper Counties also have higher percentages than Lake County, ranging from 47.06% to 34.48% respectively. Id. While there is no dispute that Lake County has more small precincts than any other county in the State, there is also no disputing that Lake County is the second largest county boasting 187 more precincts than all but one of its counterparts in addition to having a higher number of active voters in its total voting precincts. Thus, it should be of no surprise that the state’s second largest county would likewise have a larger number of small precincts. Given the variances of population from county to county, in my view the question relevant to our analysis here should not focus on the mere number of small precincts identified per county. Rather, the issue is whether the percentage of small precincts in Lake County is incongruous' to the percentage of small precincts located in every other county throughout the State.

. Collins specifically considered a constitutional challenge to the exclusion of agricultural workers under the Indiana Worker's Compensation Statute in violation of Article 1, Section 23. This Court has since applied the formulation expressed in Collins to Article 4, Section 23 claims. See, e.g., Kimsey, 781 N.E.2d at 688-94.

. It is certainly true that within the context of assessing a facial challenge to Article 1, Section 11 of our state constitution, “the claimant assumes the burden of demonstrating that there are no set of circumstances under which the statute can be constitutionally applied.” Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind.1999). Nevertheless, we have not placed such a burden on claimants raising an Article 4, Section 23 claim. I find no reason to do so now.

. Even though the majority accepts the State’s position that Section 3-11-1.5-3-4 is discretionary because it "places decision-making authority at the local level,” op. at 143, the statute expressly requires that "the board of elections and registration shall: (1) adopt a proposed precinct establishment order implementing the findings of the committee; and (2) file the proposed order with the election division....” I.C. § 3-11-1.5-3.4© (emphasis added). This is unlike the purely discretionary language in Indiana Code section 33-5-29.5-7.1, which we found to be permissible in Williams v. State, 724 N.E.2d 1070, 1086 (2000). See I.C. § 33-5-29.5-7.1 (2000) ("The judges of the criminal division may appoint two (2) full-time magistrates under IC 33-4-7 to serve the criminal division_The judges of the civil division may appoint two (2) full-time magistrates under IC 33-4-7 to serve the civil division.” (emphasis added)) {repealed by P.L.98-2004, SEC. 164).

. The only other cities in Lake County with ten or more small precincts are Hammond, East Chicago, and Lake Station with thirty, seventeen, and eleven small precincts respectively. Pl's Ex. 1, Vol. 2 at 277-280 (East Chicago), 293-300 (Hammond), 306-308 (Lake Station). Those cities may also be heavily affected by a consolidation plan. Notwithstanding, the city of Gary has as many precincts under scrutiny as these three cities combined.

. Even though consolidation of certain precincts may be in compliance with precinct boundary standards that is not to say that the relocation of the eliminated precincts would not indirectly hinder an individual voter’s ability to access the polling place. This may also impact voter turnout in this urban area. While public transportation is more readily available in our cities throughout the state, it is not always easily accessible and certainly not available without financial expense. These transportation challenges faced by hard-working voters in our inner cities who do not possess their own means of transportation is no less daunting than those faced by voters in rural environments who are equally challenged in getting to polling places.

. See for example Section 3-13-5-l(a), which provides: "A vacancy in a legislative office shall be filled by a caucus comprised of the precinct committeemen from the senate or house district where the vacancy exists who represent the same political party that elected or selected the person who held the vacated seat.”