

FILED

Mar 05 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Bryan H. Babb
Stephen C. Unger
Jonathan W. Hughes
Philip R. Zimmerly
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Bryce Douglass Owens
Pendleton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Madison County Board of
Commissioners, Madison
County Clerk, Madison County
Auditor, and Madison County
Election Board,

*Appellants-Defendants,*

v.

Kevin M. Sipe and
Wesley T. Likens,

*Appellees-Plaintiffs.*

March 5, 2020

Court of Appeals Case No.
20A-PL-51

Appeal from the Madison Circuit
Court

The Honorable Thomas L. Clem,
Judge

Trial Court Cause No.
48C05-1912-PL-167

**Mathias, Judge.**

[1] The Madison Circuit Court granted the request for a preliminary injunction

filed by Kevin M. Sipe ("Sipe") and Wesley T. Likens ("Likens") (collectively

"the Plaintiffs") in which they sought to enjoin the enforcement of a redistricting ordinance enacted by the Madison County Board of Commissioners ("the Commissioners") before the upcoming 2020 elections. The Commissioners appeal and present four issues for our review, one of which we find dispositive and restate as whether the trial court erred in concluding that the redistricting ordinance was contrary to the controlling redistricting statute. Concluding that the ordinance is in compliance with the statute, we reverse and remand.

## County Commissioners

As this case involves questions regarding the boundaries of districts for the office of county commissioner, we first provide a brief summary of the structure and function of the board of county commissioners as defined by statute.

Except in Marion County,[1] "[t]he three (3) member board of commissioners of a county elected under this chapter is the county executive," and shall transact the business of the county. Ind. Code § 36-2-2-2. The county commissioners are elected by the voters of the county for terms of four years, "alternat[ing] between one (1) and two (2) at succeeding general elections." Ind. Code § 36-2-2-3. To be eligible for election to a county's board of commissioners, a person must have resided in the county for at least one year before the election; have resided in the district in which he or she is seeking election for at least six

---

[1] *See* Ind. Code § 36-2-2-1 (providing that the Indiana Code chapter 36-2-2, defining the county executive as the board of county commissioners, does not apply to a consolidated city).

months before the election; and remain residing in the district from which the member was elected. Ind. Code § 36-2-2-5 (referencing Ind. Code § 3-8-1-21). If the member does not remain a resident of the county and district after taking office, he or she forfeits the office. *Id.* at § 5(c). In a county having a population of more than 400,000 but less than 700,000, or more than 250,000 but less than 270,000,[2] "one (1) member of the executive shall be elected by the voters of each of the three (3) single-member districts established under section 4(b) or 4(c) of this chapter." *Id.* at § 5(d). In all other counties, including Madison County, "all three (3) members of the executive shall be elected by the voters of the whole county." *Id.*

[4] One of the statutory duties of a board of county commissioners is to periodically establish the boundaries for the office of county commissioner. Ind. Code § 36-2-2-4. For counties such as Madison County, the commissioners must divide the county into three districts that are "composed of contiguous territory and are reasonably compact." *Id.* at § 4(a). The district boundaries drawn must not cross precinct boundaries and "must divide townships only when a division is clearly necessary to accomplish redistricting under this section." *Id.* When the board of county commissioners divides a county into

---

[2] According to the 2010 census, only Lake County has a population of more than 400,000 but less than 700,000, and only St. Joseph County has a population of more than 250,000 but less than 270,000. *Indiana: 2010, Population and Housing Unit Counts*, Table 4, p. 6 (Sept. 2012), available at: https://www.census.gov/prod/cen2010/cph-2-16.pdf [https://perma.cc/3LML-DWZP].

districts under this statute, they "shall adopt an ordinance" reflecting this division, which ordinance must be filed with the circuit court clerk. *Id*.

## Statement of Facts

Prior to the enactment of the ordinance at issue, Madison County was divided into three districts for the purpose of electing county commissioners. According to the 2010 census: the Northern District population was 24,353; the Middle District (including Anderson Township) population was 77,288; and the Southern District population was 29,995. Tr. p. 36. Each district was represented by one commissioner, and the commissioners are elected by the voters of the county at large. The disparity in population between the districts resulted in a "maximum population deviation"[3] of 120.64%. Under the old districting scheme, no Madison County township was divided between different districts.

---

[3] The maximum population deviated is calculated as follows:

> [F]irst, the apportionment base, usually the state's population, is divided by the number of legislators in the legislative house under consideration to arrive at the norm if absolute population equality were achieved. Second, if a district has more persons than the ideal district, the ideal district population is subtracted from the actual district population; the resulting number is then divided by the ideal district population to get the percentage of under-representation. Third, if a district has fewer persons than the ideal district, its population is subtracted from the population of the ideal district; the resulting number is then divided by the ideal district population to get the percentage of over-representation. Finally, when the percentages of under-representation or over-representation have been calculated for all districts (or all legislators in multimember districts), the district that is most over-represented is identified and the district that is most under-represented is identified; these two percentages are then added together to obtain the maximum population deviation.

25 Am. Jur. 2d *Elections* § 25. Applying this formula gives a maximum population deviation of 120.639% under the districting scheme in effect prior to the Redistricting Ordinance.

Because of the disparity in the population of the districts, the Commissioners proposed redistricting at a public meeting on July 22, 2019. At this meeting, the Commissioners unanimously voted that the President of the Board of Commissioners work with the county attorney to prepare a redistricting plan. The motion also recommended that the redrawn districts divide Anderson Township.

The redistricting plan was on the agenda at four other public meetings of the Commission: August 12, September 12, September 23, and October 14, 2019. Ex. Vol., Defendant's Exs. B, K, L, and M. At these meetings, the Commissioners discussed the redistricting plan.

At the October 14 meeting, the commissioners adopted Ordinance No. 2019-BC-0-9 ("the Redistricting Ordinance"), which provides:

> **WHEREAS**, Madison County, Indiana ("County") is divided into three (3) districts for the purpose of selecting members of the Board of County Commissioners ("Commissioner District(s)"); and
>
> **WHEREAS**, according to the 2010 federal decennial census completed by the U.S. Census Bureau, the current Commissioner Districts are not established in a manner that contains roughly equal population; and
>
> **WHEREAS**, the Board of County Commissioners for Madison County, Indiana ("Commissioners") now desire to amend and redistrict *the Commissioner Districts in a manner that will contain roughly equal population*; and
>
> **WHEREAS**, the Commissioners desire that each Commissioner District contain roughly equal population *so that the area* [of] *each*

*Commission District represents a roughly equal number of people and so that each person in Madison County has a roughly equal opportunity to seek the officer of Commissioner*; and

**WHEREAS**, the Commissioner Districts established by this Ordinance shall take effect immediately as set forth in this Ordinance.

**NOW THEREFORE BE IT ORDAINED** by the Board of Commissioners of Madison County, Indiana, as follows:

**Section 1**: The above recitals are incorporated herein by this reference as though fully set forth herein below.

**Section 2**: The three (3) Commissioner Districts for Madison County, Indiana are hereby amended, and the Commissioner Districts are hereby restated and established, as set forth in the description of the boundaries of each district attached hereto as Exhibit A,[4] which description is incorporated herein by reference ("Description").

**Section 3**: Attached to this Ordinance as Exhibit B is a map showing the boundaries of each district (collectively the "Map").

**Section 4**: In the unlikely event of a conflict between the Description and the Map, the Description shall control.

**Section 5**: This Ordinance and the new Commissioner Districts established hereunder take effect immediately upon the adoption of this Ordinance as follows: Current Commissioners shall continue to hold office until the term for which the Commission member was elected has expired under state law, the new Commissioner Districts established under this Ordinance shall constitute a current member's Commissioner District for purposes of determining the district from which he/she was

---

[4] Exhibit A of the Redistricting Ordinance defines the new commissioner districts by listing what townships and precincts are included in each district. *See id*. at 18.

elected and/or whether a member continues to be a resident of his/her Commissioner District, and the current Commissioner represents the Commissioner District established under this Ordinance in which the member's legal residence is located.

**Section 6**: The County Administrator and/or the County Attorney shall forward a signed copy of this Ordinance to the Madison County Circuit Court Clerk, along with a copy of Exhibit A and Exhibit B not later than thirty (30) days after its adoption.

**Section 7**: Consistent with Indiana Code § 36-1-6-10 any reference in this Ordinance "to the boundary of a political subdivision, a precinct boundary, or an election district boundary refers to the precinct or boundary as the precinct or boundary existed on the date of adoption" of this Ordinance. Additionally, consistent with Indiana Code § 36-1-6-10, "[a] change in the boundary of a political subdivision, precinct, or election district following the date of adoption" of this Ordinance "does not alter the boundaries of the election districts established by" this Ordinance.

**Section 8**: Commissioners shall continue to be elected by an "at-large" vote of the general population of Madison County, Indiana, but the Commissioner elected for any particular Commissioner District must reside within that Commissioner District.

**Section 9**: This Ordinance, with its attachment, shall be put on file with the County Auditor for public inspection.

**Section 10**: All prior ordinances or parts thereof in conflict with this Ordinance are hereby repealed and superseded to the extent in conflict herewith.

Appellant's App. pp. 14–15 (emphasis added).

[9] The map attached as Exhibit B to the Redistricting Ordinance depicts the districts as follows:



*Id*. at 20; Motion to Stay Exhibit C.

Thus, the Redistricting Ordinance divides Anderson Township and includes portions thereof in all three of the new districts. The populations of the new districts are: 44,264 in District 1; 44,008 in District 2; and 43,364 in District 3. The total population deviation under the Redistricting Ordinance is now 2.05%. Tr. pp. 36–37.

## Procedural History

The Plaintiffs testified that they decided to challenge the Redistricting Ordinance immediately after it was adopted in October 2019. But they did not file any legal challenge to the Ordinance until December 30, 2019, a mere six days prior to the opening of the filing period for candidates in the 2020 primary election. On this date, the Plaintiffs filed a complaint for declaratory judgment, preliminary injunction, and permanent injunction. In their complaint, the Plaintiffs claimed that the Redistricting Ordinance failed to comply with the redistricting statute. Specifically, the complaint alleged that:

> 12. The Ordinance divides Anderson Township into three (3) different districts with no showing or finding of "necessity".
>
> 13. The Ordinance fails by procedure in that no special meeting was ever called by the County Auditor to determine any "necessity".

Appellant's App. pp. 11. The complaint further alleged that both Plaintiffs were "personally affected" by the changes to the districts. *Id*.

[12] On December 31, 2019, the day after the complaint was filed and before the summonses were issued or served upon the Commissioners, the trial court set the complaint for an "emergency hearing" to be held on January 6, 2020. The Commissioners were served on January 2, 2020, and immediately filed a motion for change of venue. *See* Ind. Trial Rule 76(A) (providing that a motion for change of venue shall be granted if "the county where suit is pending is a party[.]"). The Commissioners also moved to vacate the scheduled January 6 hearing. The trial court denied the motion to vacate and did not immediately rule on the motion for change of venue.

[13] Instead, the trial court held the January 6 hearing over the Commissioners' objection, on the merits of the Plaintiffs' request for a preliminary injunction. At the hearing, the Commissioners informed the trial court that they were willing to perfect venue in another county in a speedy manner before the deadline for candidates to file closed in February. They also argued that, if preliminary relief should be granted, it should be granted only to extend the candidate filing deadline until the case could be transferred to another venue. The trial court denied this request, noting that even though it intended to grant the motion for change of venue, it would nevertheless consider the merits of the preliminary injunction request because the period for candidates to file would begin in two days.

[14] The Plaintiffs called two witnesses, who established that the Redistricting Ordinance split Anderson Township and that the Commissioners, not the County Auditor, called the special meeting that took place on September 12,

2019. The Commissioners presented evidence regarding the population of the districts under the old scheme and under the new Redistricting Ordinance. The Commissioners also submitted evidence that several other Indiana counties had commissioner districts that split townships, including: Allen, Bartholomew, Delaware, Hendricks, Monroe, Montgomery, Tippecanoe, St. Joseph, and Vanderburgh. The trial court disregarded this evidence, stating "this whole thing of using other counties and what they did as an excuse to justify what we did here, that just – that doesn't – there's just nothin[g] that seems right about that, it just seems wrong." Tr. p. 47.

[15] After the Commissioners rested, the trial court permitted the Plaintiffs to re-open their case to present the testimony of the two Plaintiffs. Likens testified that he was a voter who had not been asked his opinion regarding the redistricting plan. The trial court asked Likens, "other than just your generalized objection about what's happened[,] [i]s there anything about this process that – in any way – affects you particularly?" Tr. p. 55. Likens responded, "there was talk of maybe – maybe my wife running in that district for Commissioner[.]" *Id*. at 56. The trial court then asked, "so, but your – your particular concern is that you might otherwise want to run, in the District as it prior existed [sic], but this would keep you from doing that?" *Id*. at 57. Likens agreed but on cross-examination clarified that he had no intention of running for the office of commissioner, and that his wife, who was not a plaintiff, might run. Surprisingly, Likens did not know which district he lived in under either plan.

Sipe testified that, under the Redistricting Ordinance, District 3 was geographically larger than the old North District and that it included "people that do not really know me . . . like the previous North District people would know me." *Id.* at 67. He also stated that he did not know whether he would run for the office of Commissioner and had plenty of time to decide before the filing period ended in February.

On January 7, 2020, the trial court entered an order granting the Plaintiffs' request for a preliminary injunction. The trial court's order provides in relevant part:

8. The Ordinance purports to make certain changes to the boundaries of three (3) districts required by state law for the Madison County Commissioners.

9. The Ordinance No. 2019-BC-0-9 changes the district boundaries for the Madison County Indiana Commissioner districts in a dramatic way. The old boundaries that existed for decades guaranteed that urban and rural citizens had a voice in county government. Under the newly proposed Ordinance No. 2019-BC-0-9 there could conceivably be three (3) commissioners chosen from downtown Anderson Indiana, thereby completely eliminating the voice of rural Madison County citizens in the executive branch of local government.

10. Such a dramatic and consequential change demands closer scrutiny.

11. Indiana Code 36-2-2-4 is the controlling statute and places the authority and responsibility of the Madison County Commissioners to set such boundaries in compliance with such statute. The Madison County Commissioners have no

authority to set any boundary except as complies with such state statute.

12. Indiana Code 36-2-2-4 contains four (4) critical elements that must be complied with[.] Each of the three (3) districts must consist of "contiguous territory" that is "reasonably compact" and the district lines may not cross "precinct boundary lines" and must divide townships only, "when a division is clearly necessary to accomplish redistricting under this section". The statute goes on the state that, "If necessary, the county auditor shall call a special meeting of the executive to establish or revise districts".

13. The Ordinance fails to comply with Indiana Law both on its face and by procedure.

14. *The Ordinance divides Anderson Township into three (3) different districts with no showing or finding of "necessity".*

15. *The Ordinance fails by procedure in that no special meeting was ever called by the County Auditor to determine any "necessity".*

16. Kevin M. Sipe has standing as [a] registered Democrat who is personally affected by the purported changes to his district boundary lines.

17. Wesley T. Likens has standing as a registered Republican who is personally affected by the purported changes to his district boundary lines.

18. A Declaratory Judgment is appropriate since the issues is not subject to monetary relief. This Court has authority to hear this action under Indiana Code 34-14-1-1.

19. A preliminary injunction is appropriate since if the political process is allowed to move forward using the illegal ordinance there would be no practical way to correct the error.

20. 2020 is an election year [] in which two Madison County Commissioners are up for election and both are subject to changes in the boundaries of the districts.

21. The Plaintiffs' likelihood of success on the merits is high since the Ordinance is defective on its face.

22. Each Defendant is being sued in their official capacity only.

23. The Madison County Election Board is made a defendant for the purposes of requiring that their actions comply with this case.

24. Rick Gardner has at all relevant times been the Auditor of Madison County.

*The Court has reviewed the Complaint, the Statute and The Ordinance and based on that review finds that a Preliminary Injunction is necessary and appropriate since it appears that The Ordinance fails to comply with Indiana Law and since the 2020 election cycle is upon us and there will be irreparable harm to the citizens of Madison County Indiana if the Ordinance is used to determine the Madison County Commissioner District improperly*. The harm to the citizens of Madison County in using the previous boundaries pending the resolution of the issues in the case is minimal. The Plaintiffs' probability in prevailing is high.

IT IS THEREFOR ORDERED THAT:

1) A Preliminary Injunction is now issued which prohibits Olivia Pratt, as Madison County Clerk, and the Madison County Election Board, and the Madison County Commissioners and the Madison County Auditor from using any part of Ordinance No. 2019-BC-0-9, for any purpose pending the resolution of this case.

2) Olivia Pratt, as Madison County Clerk, and the Madison County Election Board, and the Madison County Commissioners and the Madison County Auditor shall use

the previously determined boundaries for the districts for the Madison County Commissioner's election as was used in the 2018 election cycle, pending final resolution of the case herein.

3) The Preliminary Injunction herein shall remain in full force pending resolution of the case by the court accepting the case on transfer of venue.

Appellant's App. pp 52–54 (emphases added). The day that the trial court issued its order, the Commissioners filed a Notice of Appeal and filed in the trial court a motion to stay the preliminary injunction pending the appeal. The trial court denied the motion to stay.

[18] On January 9, 2020, the Commissioners filed in this court a verified motion for emergency stay of injunctive relief pending appeal and a request for expedited briefing. We granted this motion on January 17, 2020, staying the trial court's order and scheduling expedited briefing.[5]

## Standard of Review

[19] We summarized the law of preliminary injunctions in *Clay Township of Hamilton County ex rel. Hagan v. Clay Township Regional Waste District*:

> The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. When determining whether or not to grant a preliminary injunction, the trial court is required to make special

---

[5] On January 20, 2020, the case was transferred to Hamilton Superior Court 1 under Cause No. 29D01-2002-PL-1088.

findings of fact and state its conclusions thereon. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: 1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it has at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) its threatened injury outweighs the potential harm resulting from the granting of an injunction; and 4) the public interest would not be disserved.

[W]hile we defer substantially to the trial court's findings of fact, we evaluate questions of law de novo.

838 N.E.2d 1054, 1062 (Ind. Ct. App. 2005) (citations and internal quotation marks omitted).

[20]   Resolution of the question presented also requires us to consider the language of Indiana Code section 36-2-2-4.

The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on

the point in question. If a statute is unambiguous, we must give the statute its clear and plain meaning. A statute is unambiguous if it is not susceptible to more than one interpretation. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*Gray v. D & G, Inc.*, 938 N.E.2d 256, 258–59 (Ind. Ct. App. 2010) (quoting *Nieto v. Kezy*, 846 N.E.2d 327, 335 (Ind. Ct. App. 2006)).

[21] The primary goal in statutory construction is to ascertain and give effect to the intent of the legislature. *Id.* at 259. (citing *Hannis v. Deuth*, 816 N.E.2d 872, 876 (Ind. Ct. App. 2004)). The best evidence of legislative intent is the language of the statute itself, and we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.* Moreover, in construing a statutory provision, we will assume that the legislature did not enact a useless provision. *Id.* Therefore, when possible, every word is to be given effect and no part of the statute is to be construed as meaningless if it can be reconciled with the rest of the statute. *Id.*

## Discussion and Decision

[22] The Plaintiffs' request for a preliminary injunction was based on two alleged failings of the Redistricting Ordinance: (1) that "the Ordinance divides

Anderson Township into three (3) districts with no showing or finding of "necessity"; and (2) that "the Ordinance fails by procedure in that no special meeting was ever called by the County Auditor to determine any "necessity." Appellant's App. p. 11. The Commissioners argue that the Redistricting Ordinance was a valid exercise of their authority that complied with the redistricting statute and that the trial court erred in concluding otherwise.

[23]     Indiana Code section 36-2-2-4 ("Section 4"), which is at the heart of this controversy, provides in relevant part:

> (a) This subsection does not apply to a county having a population of:
>
>> (1) more than four hundred thousand (400,000) but less than seven hundred thousand (700,000); or
>>
>> (2) more than two hundred fifty thousand (250,000) but less than two hundred seventy thousand (270,000).[6]
>
> The executive shall divide the county into three (3) districts that are composed of contiguous territory and are reasonably compact. The district boundaries drawn by the executive must not cross precinct boundary lines *and must divide townships only when a division is clearly necessary to accomplish redistricting under this section.* If necessary, the county auditor shall call a special meeting of the executive to establish or revise districts.
>
> *  *  *

---

[6] Neither party disputes that Madison County does not have a population of more than 400,000 but less than 700,000 nor more than 250,000 but less than 270,000. As of the 2010 census, Madison County had a population of 131,636. *Indiana: 2010, Population and Housing Unit Counts*, Table 4, p. 6 (Sept. 2012), available at: https://www.census.gov/prod/cen2010/cph-2-16.pdf [https://perma.cc/3LML-DWZP].

(e) Except as provided by subsection (g), a division under subsection (a), (b), or (c) shall be made:

> (1) during the first year after a year in which a federal decennial census is conducted; and

> (2) when the county adopts an order declaring a county boundary to be changed under IC 36-2-1-2.

(f) A division under subsection (a), (b), or (c) *may* be made in any odd-numbered year not described in subsection (e).

(g) This subsection applies during the first year after a year in which a federal decennial census is conducted. If the county executive or county redistricting commission determines that a division under subsection (e) is not required, the county executive or county redistricting commission shall adopt an ordinance recertifying that the districts as drawn comply with this section.

(h) Each time there is a division under subsection (e) or (f) or a recertification under subsection (g), the county executive or county redistricting commission shall file with the circuit court clerk of the county, not later than thirty (30) days after the division or recertification occurs, a map of the district boundaries:

> (1) adopted under subsection (e) or (f); or

> (2) recertified under subsection (g).

(i) *The limitations set forth in this section are part of the ordinance, but do not have to be specifically set forth in the ordinance. The ordinance must be construed, if possible, to comply with this chapter.* If a provision of the ordinance or an application of the ordinance violates this chapter, the invalidity does not affect the other provisions or applications of the ordinance that can be given effect without the invalid provision or application. The provisions of the ordinance are severable.

* * *

Ind. Code § 36-2-2-4 (emphases added).

## I. *Special Meeting Called by the County Auditor*

[24] We first address the trial court's conclusion that the Redistricting Ordinance is invalid because the County Auditor did not call for a special meeting to determine any necessity for redistricting. This misreads Section 4. The last sentence in Subsection 4(a) states that, "if necessary," the County Auditor "shall call a special meeting of [the Commissioners] to establish or revise districts." A plain reading of this provision reveals that a special meeting called by the County Auditor is not a prerequisite to redistricting. Instead, Section 4 sets forth three circumstances under which redistricting must or may take place: (1) the year after a decennial census, (2) any odd-numbered year, and (3) when the county auditor deems it necessary. We do not read Section 4 to mean that the Commissioners cannot redistrict in an odd-numbered year without a special meeting called by the County Auditor. If the General Assembly intended to impose such a restriction, it could have done so explicitly, but it did not. Accordingly, the trial court clearly erred in concluding that the Redistricting Ordinance was procedurally defective because the County Auditor did not call for a special meeting.

## II. *Necessity of Dividing Anderson Township*

[25] The trial court also concluded that the Redistricting Ordinance was invalid because it divided Anderson Township among districts without a finding that

such division was "clearly necessary" as required by Subsection 4(a). To the extent that the trial court concluded that the Redistricting Ordinance was facially invalid because it failed to specifically declare such a necessity, this was clearly erroneous. Although Section 4 states that the Commissioners may divide a township only if it is clearly necessary to accomplish the redistricting, the statute does not require the redistricting ordinance to include language declaring such a necessity. To the contrary, Subsection 4(i) provides that the limitations set forth in Section 4 are "part of the [redistricting] ordinance" by operation of statute and "do not have to be specifically set forth in the ordinance." It further provides that a redistricting ordinance "must be construed, if possible, to comply with this chapter." *Id.* We therefore conclude that the trial court clearly erred in finding that the Redistricting Ordinance was facially invalid because it did not include language specifically declaring that dividing Anderson Township was "clearly necessary."

[26] Moreover, we disagree with the trial court that there was no evidence supporting a finding that dividing Anderson Township among districts was "clearly necessary." As noted above, Section 4(a) provides that the district boundaries drawn by county commissioners "must not cross precinct boundary lines and must divide townships only when a division is clearly necessary to accomplish redistricting under this section." *Id.* Thus, under a plain reading of this provision, Subsection 4(a) contains a complete ban on dividing *precincts* among districts, but there is no similar bar to dividing *townships*. Instead, district

boundary lines may divide townships if such a division is "clearly necessary" to accomplish the redistricting.

[27] The essential question is whether dividing Anderson Township among the three districts was "clearly necessary" to accomplish the redistricting. We believe that the determination of whether dividing a township among districts is "clearly necessary" is a legislative judgment that should be given considerable deference by the judiciary. *See State Election Bd. v. Bartolomei*, 434 N.E.2d 74, 77 (Ind. Ct. App. 1982) (holding statute governing the drawing of councilmanic districts based on population, compactness, and a preference for including whole townships dealt with a "subject matter which is both multi-faceted and characterized by the juxtaposition of a variety of competing and arguable political views, warranting the court in granting the legislative judgment considerable deference.") (citing *Dortch v. Lugar*, 255 Ind. 545, 266 N.E.2d 25 (1971), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind. 1994)). Applying such deference, we conclude that the Commissioners were well within their discretion to determine that it was clearly necessary to divide Anderson Township among districts.

[28] Indeed, the Commissioners had a compelling reason for dividing Anderson Township among the commissioner districts: to divide the population of Madison County into districts that are of roughly equal population. It is mathematically impossible to divide Madison County into districts of roughly equal population without dividing Anderson Township. Anderson Township, with a population of 56,436, is by far the largest township in Madison County.

If Anderson Township were not divided, i.e., if it consisted of one district, and the remaining townships were split among the other two districts, the lowest maximum population deviation among districts would be approximately 43%. Thus, to achieve their goal of a more equal population among the three districts, the Commissioners *had* to divide Anderson Township. This is more than sufficient to support a conclusion that dividing Anderson Township was "clearly necessary."

[29] Even though the Commissioners are elected at large by the voters of Madison County, each of the three Commissioners themselves come from one of the three districts. *See* Ind. Code § 36-2-2-5(b) ("A member of the executive [i.e., the board of county commissioners] must reside within . . . the district from which the member is elected."). The Commissioners had a legitimate concern that permitting the districts to remain unbalanced could cause underrepresentation of commissioners from the old Middle District, with a population greater than the other two districts combined, and overrepresentation of commissioners from the two more sparsely populated districts.[7]

[30] Indeed, Subsection 4(e) generally *requires* the Commissioners to redraw district boundaries the year after a decennial federal census. This signals a clear

---

[7] The Commissioners note that, in cases involving single-member districts, the United States Supreme Court has held that an apportionment plan with a maximum population deviation under 10% is considered a "minor deviation," but plans with deviations larger than 10% create a prima facie case of discrimination that must be justified by the state. *See Brown v. Thompson*, 462 U.S. 835, 842–43 (1983). The Plaintiffs argue that the Commissioners' citation to the "ten percent rule" is "red herring" because the Commissioners are elected at large, *see* Ind. Code § 36-2-2-5(d), and there is therefore no concern of vote dilution. Because the Commissioners are elected at large, we need not consider any concerns about vote dilution or attempt to apply the "ten percent rule."

legislative intent to empower county commissioners to redraw the districts according to changes in population, as there would be no reason to require that district boundaries be redrawn after a census—at which time changes in population are determined—if the population of the districts were not intended to be balanced. As noted, the Commissioners clearly indicated in the Redistricting Ordinance that they divided Anderson Township to achieve a more balanced population in the districts.

Under these facts and circumstances, the Commissioners were well within their legislative discretion to determine that it was "clearly necessary" to redraw the district boundaries in such a manner as to divide Anderson Township among the districts in order that the districts be balanced in population. The Redistricting Ordinance does not violate any of the provisions of Section 4, and the Plaintiffs cannot prevail on the merits of their claim. Accordingly, the trial court erred in granting their request for a preliminary injunction.[8]

## Conclusion

The Madison County Board of County Commissioner's Redistricting Ordinance does not run afoul of the redistricting statute. The Plaintiffs cannot prevail on the merits of their case, and the trial court erred in granting their request for a preliminary injunction. We therefore reverse the trial court's entry

[8] Because we conclude that the trial court erred by granting the preliminary injunction, we decline to address the Commissioners' remaining arguments, i.e. that the Plaintiffs lacked standing, that the trial court was without authority to act due to the pending motion for change of venue, and that the trial court's order was improper because it did not contain adequate findings of fact and conclusions of law.

of the preliminary injunction and remand for proceedings consistent with this opinion.

[33] Reversed and remanded.

Kirsch, J., and Bailey, J., concur.